Colin V. Quinlan (SBN 332225)
Email: colin.quinlan@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:    (213) 443-5100
Facsimile:    (213) 443-5101
Attorneys for Defendant Dimitri Elkin

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| Eric WHITE,<br><br>                              Plaintiff,<br><br>     vs.<br><br>BROOGE ENERGY LIMITED, et al.,<br><br>                              Defendants. | Case No. 2:24-cv-00959-AH-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DIMITRI ELKIN'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>[Filed contemporaneously with Notice of Motion and Motion]<br><br>Hon. Anne Hwang<br><br>Date:        April 23, 2025<br>Time:        1:30 p.m.<br>Location:   350 W. 1st Street,<br>                  Courtroom 7D |
|---|---|

MEMORANDUM ISO DEFENDANT DIMITRI ELKIN'S MOTION TO DISMISS AMENDED COMPLAINT
307729661v.3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

A year and a day after the service of the initial complaint in this securities class action, Dkt. No. 1, most of the Defendants named in that complaint have yet to be served, including Defendants alleged to have been the architects and primary beneficiaries of the fraudulent scheme alleged in the Amended Class Action Complaint ("Amended Complaint") filed by Lead Plaintiff Bluefin Capital Management, LLC on December 6, 2024, Dkt. No. 46. Few if any allegations in the Amended Complaint concern any conduct by Defendant Dimitri Elkin, the sole individual Defendant who has been served to date. *Cf.* Dkt. No. 46-1 (Appendix A - Misstatements Chart); Dkt. No. 46-2 (Appendix B - Entities Chart). Indeed, while Count II of the Amended Complaint pleads a single claim against Mr. Elkin alleging secondary liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), Am. Compl. ¶¶ 232-238, the Amended Complaint does not sufficiently allege any primary violation by an entity while Mr. Elkin was a controlling person of such entity. In particular, the Amended Complaint fails to allege facts supporting a strong inference of scienter attributable to an entity while Mr. Elkin was a controlling person thereof.

In addition, by failing to serve any Defendant other than Mr. Elkin and Brooge Energy Limited, Lead Plaintiff has, in effect, failed to join necessary and indispensable parties, the absence of whom will prejudice Mr. Elkin's right to defend himself in this action.

The Court therefore should dismiss this action against Mr. Elkin, and allow Lead Plaintiff to proceed against the Defendants who are alleged to have engaged in the deliberate fraudulent scheme detailed in the Amended Complaint, as well as the multiple auditing firms who are alleged to have enabled these absent Defendants to perpetuate that scheme for years.

## II.  FACTUAL SUMMARY

According to the allegations in the Amended Complaint, Mr. Elkin served as a director of Twelve Seas Investment Co. ("Twelve Seas") from its inception in November 2017 until May 2018, and as Twelve Seas's CEO from its inception until the approval of the transaction (known as the "Business Combination") by which Twelve Seas "became a wholly-owned subsidiary of Brooge."  Am. Compl. ¶¶ 25, 48.  Mr. Elkin also was the sole managing member of Twelve Seas Sponsors I LLC (the "Sponsor").  *Id.* ¶¶ 25, 35.

Notably, Mr. Elkin "ceased to have any role in Twelve Seas" following the approval of the Business Combination.  *Id.* ¶ 48; *see also id.* ¶ 25 ("When the Business Combination occurred, Defendant Elkin resigned as [Twelve Seas's] CEO.").  Mr. Elkin thus never served on the board or as an officer of Twelve Seas (or any other entity) at the same time as the Executive Defendants, Nicolaas L. Paardenkooper, Lina Saheb, Saleh Mohamed Yammout, Syed Masood Ali and Paul Ditchburn.  *Compare* Am. Compl. ¶¶ 25, 48 (Mr. Elkin resigned as CEO and ceased to have any role in Twelve Seas following the approval of the Business Combination), *with id.* ¶ 17 (Defendant Paardenkooper became CEO and board member of post-Business Combination Brooge); *id.* ¶ 18 (Defendant Saheb, BPGIC FZE's Chief Strategy Officer, became Chief Strategy Officer of post-Business Combination Brooge); *id.* ¶ 19 (Defendant Yammout, BPGIC FZE's CFO, became CFO and board member of post-Business Combination Brooge); *id.* ¶ 20 (Defendant Masood became Brooge CFO in April 2020); *id.* ¶ 21 (Defendant Ditchburn became Brooge CFO in December 2022).

## III.  ARGUMENT

In order to plead a violation of Section 20(a), a plaintiff must allege both a primary violation by an entity, "and that 'the defendant exercised actual power or control over the primary violator.'"  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (quoting *No. 84 Employer-Teamster Joint Council*

3

*Pension Trust Fund v. Am. W. Holding Corp.* ("*America West*"), 320 F.3d 920, 945 (9th Cir. 2003)).

To plead a primary violation of Rule 10b-5, "a plaintiff must demonstrate '(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss.'" *Id.* (quoting *In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 987, 1014 (9th Cir. 2005)). Allegations of scienter are subject to a heightened pleading standard under 15 U.S.C. § 78u-4(b)(2). "To plead scienter, a complaint "must 'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors.'" *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 535 (9th Cir. 2024) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008)). "The 'strong inference" 'must be cogent and compelling, thus strong in light of other [countervailing] explanations,' not merely 'reasonable' or 'permissible.'" *Id.* (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014)) (alteration in original). "Deliberate recklessness is a higher standard than mere recklessness and requires more than a motive to commit fraud." *Id.* at 536 (internal quotation marks omitted) (quoting *Glazer Cap. Mgmt., L.P. v. Forescout Techs. Inc.*, 63 F.4th 747, 765 (9th Cir. 2023)). "Instead, deliberate recklessness represents 'an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (internal quotation marks omitted; ellipsis in original) (quoting *Zucco*, 552 F.3d at 991); *see also Janas v. McCracken* (*In re Silicon Graphics Sec. Litig.*), 183 F.3d 970, 979 (9th Cir. 1999) ("[P]laintiffs proceeding under the PSLRA can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent.").

Under Rule 12(b)(7), "[a] party may move to dismiss a complaint for 'failure to join a party under Rule 19.'" *Sequeira v. United States Dep't of Homeland Sec.*, 347 F.R.D. 510, 514 (N.D. Cal. 2024) (quoting Fed. R. Civ. P. 12(b)(7)). "This rule is designed 'to protect the interests of absent parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial determinations or the impairment of interests or rights.'" *Id.* (quoting *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991)).

Rule 19 requires a three-step inquiry: (1) determining whether the absent party is a "required party" and "must be joined" if feasible; (2) determining whether the "required party" can feasibly be joined; and (3) if the party "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

*Id.* (quoting *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019)). "Rule 19(b) provides that the factors to be considered to determine whether an action should be dismissed because a non-party is indispensable are: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991).

### A.   The Amended Complaint Fails to Allege That Mr. Elkin Was a Control Person of Any Entity at the Time of a Primary Violation

The Amended Complaint fails to state a Section 20(a) claim against Mr. Elkin because it does not allege that Mr. Elkin was a controlling person of any entity at the time such entity is alleged to have committed a primary violation. To put it plainly: The only adequately pleaded allegations of scienter are with respect to the

Executive Defendants, and Mr. Elkin was never a controlling person of any entity while it was also controlled by the Executive Defendants.

The Amended Complaint alleges that Mr. Elkin was a controlling person of Twelve Seas *before* it became a wholly owned subsidiary of Brooge, Am. Compl. ¶¶ 25, and that he was a controlling person of the Sponsor, *id.* ¶¶ 25, 35.  Yet, the Amended Complaint fails to allege that Twelve Seas committed a primary violation prior to the Business Combination because, prior to the Business Combination, the only allegations of scienter attributable to Twelve Seas are the "Additional Scienter Allections" against the so-called SPAC Defendants (a term defined to refer collectively to Mr. Elkin and two absent individual Defendants), *id.* ¶¶ 133-139, which, as discussed in the next section, fail to meet the heightened pleading standard under the PSLRA.

The Amended Complaint's allegations relating to the Sponsor do not even allege any of the elements of a primary violation at all, but instead appear to be the basis of "motive and opportunity" allegations against the SPAC Defendants.  *Cf. id.* ¶¶ 133-134.  The allegations regarding Mr. Elkin's role as a controlling person of the Sponsor therefore do not support a Section 20(a) claim against Mr. Elkin.

**1.    The Amended Complaint Fails to Allege Scienter with Sufficient Particularity to Plead a Primary Violation by Twelve Seas Prior to the Business Combination**

While the Amended Complaint alleges deliberate fraudulent conduct by the Executive Defendants and efforts to cover up that fraud, Am. Compl. ¶¶ 140-153, the Executive Defendants did not become controlling persons of any company related to Twelve Seas until after the Business Combination, *id.* ¶¶ 17-21.

The only false or misleading statements alleged to have been made by Twelve Seas prior to the Business Combination are statements in the November 2019 Proxy. *See* Am. Compl. ¶¶ 96, 98, 103, 105, 110, 112; *cf.* Dkt. No. 46-1 (Misstatements Charge) at 1, 3-6).  The Amended Complaint does not contain factual allegations

MEMORANDUM ISO DEFENDANT DIMITRI ELKIN'S MOTION TO DISMISS AMENDED COMPLAINT
307729661v.3

against anyone in Twelve Seas's management or on its board that are sufficient to support the necessary strong inference of scienter at the time of the Proxy that would be necessary to show a primary violation by Twelve Seas prior to the Business Combination.

In contrast to the ample scienter allegations with regard to the Executive Defendants, *id.* ¶¶ 140-153, the Amended Complaint's "Additional Scienter Allegations for the SPAC Defendants," *id.* ¶¶ 133-139, consist of only "motive and opportunity" allegations that are inadequate as a matter of law to support the necessary inference of scienter. *Zucco*, 552 F.3d at 998 (holding that allegations demonstrating "only 'motive and opportunity,' . . . without more, [are] not enough to establish a cogent and compelling inference of scienter"); *see also E. Ohman J v. NVIDIA Corp.*, 81 F.4th 918, 940-41 (9th Cir. 2023) (holding that allegations defendant "had access to contradictory information" were insufficient to support strong inference of scienter). The boilerplate, generalized, and conclusory allegations in the Amended Complaint against all "Individual Defendants," Am. Compl. ¶¶ 131-132, offer no further support for establishing the cogent and compelling inference necessary to show a primary violation by Twelve Seas prior to the Business Combination.

Not only does the Amended Complaint not include something "more" than motive and opportunity allegations in its efforts to establish scienter attributable Twelve Seas pre-Business Combination, in fact, the facts alleged support an equally if not more plausible inference that the Executive Defendants' fraudulent invoicing scheme was kept from Mr. Elkin and other members of Twelve Seas's management and board of directors. *See Glazer Capital*, 549 F.3d at 746-47 (observing that "the surreptitious nature of the transactions creates an equally strong inference that the payments would have deliberately been kept secret" from defendants). This inference of non-culpable intent by Mr. Elkin and others at Twelve Seas is made all the more plausible because of the clean audit opinions given by absent Auditor

Defendant Ernst & Young (Bahrain) ("E&Y") with respect to the financial statements of Brooge Petroleum and Gas Investment Company FZE ("BPGIC FZE") that were reviewed by Twelve Seas. Am. Compl. ¶ 165; *cf. also id.* ¶ 158 ("Public investors, creditors and others rely on independent, registered public accounting firms to audit financial statements and assess internal controls when deciding whether to invest in, or to do business with, a public company.").

In sum: Mr. Elkin never served as a controlling person of the same entity as the Executive Defendants, whose deliberate accounting fraud is the basis for the only allegations in the Amended Complaint that give rise to a cogent and compelling inference of scienter underlying the primary violations of the securities laws relating to the entities involved in the Business Combination. Thus, the facts alleged in the Amended Complaint do not show a primary violation that could support the Section 20(a) claim pleaded against Mr. Elkin in Count II of the Amended Complaint, and therefore the Amended Complaint fails to state a claim against Mr. Elkin.

### 2. The Lack of Particularity in Allegations

The allegations in Count II of the Amended Complaint uniformly conflate different entities and, thereby, different time periods, *see, e.g.*, Am. Compl. ¶¶ 233-238 (making allegations regarding "Brooge or Twelve Seas" or "Brooge/Twelve Seas"). This inartful pleading is not harmless with regard to the allegations against Mr. Elkin, given that Mr. Elkin never served as an officer or director of Brooge, or of Twelve Seas after it became a wholly-owned subsidiary of Brooge following the Business Combination. Am. Compl. ¶¶ 25, 48. This pervasive defect is further compounded by the Amended Complaint's express decision to use the term "Brooge" and "Company" to "refer to BPGIZ FZE before the Business Combination, and *Brooge* after the Business Combination, unless otherwise specified." Am. Compl. ¶ 16 (emphasis added). In other words, the consistent conflation of Brooge and Twelve Seas renders Count II's allegations hopelessly

meaningless or otherwise deficient as to Mr. Elkin in light of facts alleged elsewhere in the Amended Complaint that make clear that Mr. Elkin was never a controlling person of any entity named or related to "Brooge" *while* it was named or related to "Brooge." *E.g.*, Am. Compl. ¶¶ 25, 48.

**B.    This Action Should Not Proceed Against Mr. Elkin as the Sole Individual Defendant**

If the Lead Plaintiff fails to serve absent Defendants, it will unduly and inequitably prejudice Mr. Elkin in at least two ways: One, Mr. Elkin's ability to defend himself against liability will be prejudiced; and two, Mr. Elkin will be the sole individual facing liability pursuant to a complaint whose allegations show that absent parties engaged in far more culpable conduct.

If this action proceeds past the pleadings stage, Mr. Elkin has defenses to liability that will be prejudiced by the absence of the Executive Defendants and E&Y, including two defenses that are obvious from the face of the Amended Complaint.  First, Mr. Elkin will be able to assert an affirmative defense of good-faith conduct and non-inducement of a controlled entity's alleged primary violation. *See* 15 U.S.C. § 78t(a) (Section 20(a) of the Exchange Act) (controlling person not liable if they "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action").  Second, Mr. Elkin will also be able to defend against the Section 20(a) claim asserted against him by rebutting the showing that he "exercised actual power or control over the primary violator." *Zucco*, 522 F.3d at 990 (internal quotation marks omitted) (quoting *America West*, 320 F.3d at 945).  Such a showing is required as an element of Lead Plaintiff's Section 20(a) claim under Ninth Circuit law, yet is ill-suited to resolution on a motion to dismiss because it is considered an "intensely factual question." *Id.* (internal quotation marks omitted) (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

MEMORANDUM ISO DEFENDANT DIMITRI ELKIN'S MOTION TO DISMISS AMENDED COMPLAINT
307729661v.3

While neither of these defenses are amenable to resolution on a motion to dismiss for failure to state a claim, their presence in the litigation highlights the prejudice to Mr. Elkin and his due process rights if this action is allowed to proceed against him as the sole individual Defendant.  Without the Executive Defendants and E&Y in this action, Mr. Elkin's ability to prove his lack of culpability will be impaired by the lack of discovery from these Defendants.

Further, if Mr. Elkin were to be ultimately found liable for a derivative violation based on a primary violation premised on intentional fraudulent scheme perpetrated by the absent Executive Defendants and enabled by the absent Auditor Defendants, Mr. Elkin will be left facing liability far out of proportion of his alleged culpability.  The allegations against Executive Defendants show a pattern of deliberate conscious fraudulent wrongdoing.  *See, e.g.*, Am. Compl. ¶¶ 141, 146-149 (allegations that Executive Defendants knowingly effectuated, and covered up, fake invoicing scheme).  Mr. Elkin, and the entities he is alleged to have controlled, were in a very real sense the targets of that conduct.  Thus, Mr. Elkin's interest in not being found solely liable for such allegations based on a derivative claim is a valid interest that should be considered when determining whether, in equity and good conscience, the Court should proceed without the absent Defendants.  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii) (asking whether absence of a necessary party would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest"); *see also Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968) ("[T]he defendant may properly wish to avoid multiple litigation, or inconsistent relief, or *sole responsibility for a liability he shares with another.*" (emphasis added)).  The prejudice to Mr. Elkin that would arise from proceeding without the absent Defendants is also a Rule 19(b) factor weighing in favor of dismissing this action against Mr. Elkin if the absent Defendants are not served and thus never truly "joined" in this action.  *See* Fed. R. Civ. P. 19(b)(1) (providing that courts should

10

examine the "prejudice to any party," among other factors, when determining whether to proceed without absent necessary and indispensable parties).

Mr. Elkin is the sole individual Defendant before the Court in this action; so long as that remains the case, this action cannot proceed against him in equity and good conscience.  If the absent Executive Defendants and Auditor Defendants are never joined, the Court should dismiss this action as to Mr. Elkin pursuant to Rule 12(b)(7) and Rule 19.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Elkin respectfully requests that the Court grant this motion and dismiss the Amended Complaint against Mr. Elkin.

Dated: February 6, 2025

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Colin V. Quinlan
Attorneys for Defendant Dimitri Elkin

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Dimitri Elkin and Caroline Lee Elkin, certifies that this brief contains 3,080 words, which complies with the word limit of L.R. 11-6.1.  The brief also complies with Paragraph F(3) of the Court's Standing Order, Dkt. No. 48, which states that memoranda of points and authorities in support of motions shall not exceed twenty-five (25) pages.

Dated: February 6, 2025                    By:   */s/ Colin V. Quinlan*
                                                        Colin V. Quinlan

MEMORANDUM ISO DEFENDANT DIMITRI ELKIN'S MOTION TO DISMISS AMENDED COMPLAINT

307729661v.3