Perrie M. Weiner, State Bar No. 134146
perrie.weiner@bakermckenzie.com
Benjamin W. Turner, State Bar No. 256092
ben.turner@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, California  90067
Telephone:    310.201.4728
Facsimile:    310.201.4721

Stacey H. Wang, State Bar No. 245195
stacey.wang@hklaw.com
Kathryn J. Richards, State Bar No. 346956
kathryn.richards@hklaw.com
**HOLLAND & KNIGHT LLP**
400 South Hope Street, 8th Floor
Los Angeles, California  90071
Telephone:    213.896.2480
Facsimile:    213.896.2450

Attorneys for Defendant
BROOGE ENERGY LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ERIC WHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BROOGE ENERGY LIMITED F/K/A BROOGE HOLDINGS LIMITED F/K/A TWELVE SEAS INVESTMENT COMPANY, NICOLAAS L. PAARDENKOOPER, SALEH YAMMOUT, SYED MASOOD ALI, LINA SAHEB, DIMITRI ELKIN, NEIL RICHARDSON, STEPHEN N. CANNON, PAUL DITCHBURN, ERNST & YOUNG, and PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH,<br><br>Defendants. | **Case No. 2:24-cv-00959-AH-DFM**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:    April 23, 2025<br>Time:    1:30 p.m.<br>Ctrm:    7D, 7th Floor<br>Judge:    Hon. Anne Hwang<br><br>First Street Courthouse<br>350 W. 1st Street<br>Los Angeles, California 90012 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..............................................................................................1

STATEMENT OF FACTS ...............................................................................5

ARGUMENT ....................................................................................................7

I.     Legal Standard .......................................................................7

II.    There Is No Article III Jurisdiction Because Plaintiff And The Rest Of The Proposed Class Will Be Fully Compensated Via The Fair Fund .......8

III.   Apart From Article III Jurisdiction, Plaintiff's Lack Of Damages Is A Dispositive Pleading Defect .................................................12

     A.     Plaintiff's Own "Loss Analysis" Confirms It Suffered No Economic Loss Attributable To Any Alleged Fraud.....................12

     B.     Plaintiff Cannot Obtain A Double Recovery...............................14

     C.     Plaintiff Fails To Identify An Actionable "Corrective Disclosure" .......................................................................17

IV.   Plaintiff Fails To Establish Scienter As To Brooge, As Opposed To The Individual (Unserved) Defendants .........................................19

     A.     Plaintiff's Allegations Come From The Administrative Order, Which Cannot Be Used To Establish Scienter ..............................20

     B.     Plaintiff Alleges "Corporate Scienter," A Doctrine That Has Not Been Adopted In The Ninth Circuit And Is Not Applicable Here 21

     C.     Plaintiff Fails To Specifically Plead Brooge's Scienter Under The "Core Operations Doctrine".........................................................23

CONCLUSION.................................................................................................25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Affirm Holdings, Inc. Secs. Litig.*,
  2024 WL 3955453 (N.D. Cal. Aug. 26, 2024) .................................................. 24

*Aguilar v. Nat'l Prod. Workers Union Severance Tr. Plan*,
  2019 WL 9514732 (C.D. Cal. Nov. 1, 2019) ...................................................... 9

*Amorosa v. Gen. Elec. Co.*,
  2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) .................................................... 21

*In re Arrowhead Pharms., Inc. Secs. Litig.*,
  2017 WL 5635422 (C.D. Cal. Sept. 20, 2017) ................................................... 22

*Bajjuri v. Raytheon Techs. Corp.*,
  641 F. Supp. 3d 735 (D. Ariz. 2022) ................................................................. 19

*Berry v. Webloyalty.com, Inc.*,
  517 Fed. App'x 581 (9th Cir. 2013) .................................................................... 9

*In re BofI Holding, Inc. Secs. Litig.*,
  977 F.3d 781 (9th Cir. 2020) .............................................................................. 18

*Chen v. Allstate Ins. Co.*,
  819 F.3d 1136 (9th Cir. 2016) .............................................................................. 9

*Cho v. UCBH Holdings, Inc.*,
  890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................................. 20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .............................................................................. 19

*Clark v. City of Lakewood*,
  259 F.3d 996 (9th Cir. 2001) ................................................................................ 9

*In re Connectics Corp. Secs. Litig.*,
  542 F. Supp. 2d 996 (N.D. Cal. 2008) ............................................................... 21

*D'Lil v. Best W. Encina Lodge & Suites*,
  538 F.3d 1031 (9th Cir. 2008) ............................................................................ 11

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................... 12, 17

*Duran v. Town of Cicero, Ill.*,
   653 F.3d 632 (7th Cir. 2011) ...................................................................................15

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002)..................................................................................................15

*In re Eargo, Inc. Secs. Litig.*,
   2023 WL 5663154 (N.D. Cal. Aug. 31, 2023)........................................................22

*In re Eargo, Inc. Secs. Litig.*,
   656 F. Supp. 3d 928 (N.D. Cal. 2023).....................................................................24

*Frank v. Gaos*,
   586 U.S. 485 (2019)..................................................................................................11

*Geinko v. Padda*,
   2002 WL 276236 (N.D. Ill. Feb. 27, 2002).............................................................21

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)..................................................................................................14

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)..................................................................................................... 9

*Gladstone Realtors v. Vill. of Bellwood*,
   441 U.S. 91 (1979)....................................................................................................11

*Glaser v. Enzo Biochem, Inc.*,
   464 F.3d 474 (4th Cir. 2006) ...................................................................................13

*Gru v. Axsome Therapeutics, Inc.*,
   2023 WL 6214581 (S.D.N.Y. Sept. 25, 2023) ........................................................14

*Hershewe v. JOYY Inc.*,
   2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) ..........................................................22

*Hunt v. Bloom Energy Corp.*,
   2021 WL 4461171 (N.D. Cal. Sept. 29, 2021).........................................................22

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
   998 F.3d 397 (9th Cir. 2021) ...................................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................ 6

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990) ........................................................................................... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................. 8

*Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Mo.*,
   361 U.S. 363 (1960) ........................................................................................... 10

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ............................................................................... 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 8

*Luman v. Theismann*,
   647 Fed. App'x 804 (9th Cir. 2016) .................................................................... 9

*MacPhee v. MiMedx Grp., Inc.*,
   73 F.4th 1220 (11th Cir. 2023) ..................................................................... 13, 14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ................................................................. 18, 19, 23

*MFS Secs. Corp. v. NYSE, Inc.*,
   277 F.3d 613 (2d Cir. 2002) ............................................................................... 12

*Mirabadi v. Select Portfolio Servicing, Inc.*,
   2024 WL 1151673 (C.D. Cal. Feb. 13, 2024) ..................................................... 9

*Muhammad v. China Sky One Med., Inc.*,
   2014 WL 12558003 (C.D. Cal. July 14, 2014) ................................................. 17

*Murphy v. Gallagher*,
   761 F.2d 878 (2d Cir. 1985) ............................................................................... 15

*N.C. v. Rice*,
   404 U.S. 244 (1971) ........................................................................................... 11

*Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*,
   73 F. Supp. 3d 1206 (N.D. Cal. 2014) .............................................................. 15

iv      Case No. 2:24-cv-00959-AH-DFM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

*Nozak v. N. Dynasty Minerals Ltd.*,
  804 Fed. App'x 732 (9th Cir. 2020) .................................................................21, 22

*In re NVIDIA Corp. Secs. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ...........................................................21, 22, 23, 24

*In re Odyssey Healthcare, Inc. Secs. Litig.*,
  424 F. Supp. 2d 880 (N.D. Tex. 2005) ....................................................................17

*People v. Chevron Corp.*,
  872 F.2d 1410 (9th Cir. 1989) ................................................................................15

*Phelan v. Local 305 of the United Ass'n of Journeymen*,
  973 F.2d 1050 (2d Cir. 1992) .................................................................................15

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ..................................................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ...........................................................................23, 24

*Ramos v. Comerica Inc.*,
  2024 WL 2104398 (C.D. Cal. Apr. 12, 2024) .......................................................19

*In re Rigel Pharms., Inc. Secs. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ..................................................................................22

*S.E.C. v. Drexel Burnham Lambert, Inc.*,
  956 F. Supp. 503 (S.D.N.Y. 1997) ........................................................................15

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) .................................................................20

*In re Sentinelone, Inc. Secs. Litig.*,
  2024 WL 3297150 (N.D. Cal. July 2, 2024) .........................................................24

*in re Silicon Graphics Inc. Secs. Litig.*,
  183 F.3d 970 (9th Cir. 1999) .........................................................................8, 19, 25

*In re Snap Inc. Secs. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .........................................................16

*Stein v. United Artists Corp.*,
  691 F.2d 885 (9th Cir. 1982) ..................................................................................15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
  552 U.S. 148 (2008)...............................................................................................16

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) .................................................................................13

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980).................................................................................................8

*In re UBS Auction Rate Secs. Litig.*,
  2010 WL 2541166 (S.D.N.Y. June 10, 2010) ........................................................20

*Union Pac. R.R. v. Bhd. of Locomotive Eng'rs*,
  558 U.S. 67 (2009)..................................................................................................11

*Vinci v. Waste Mgmt., Inc.*,
  80 F.3d 1372 (9th Cir.1996) ...................................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 3058563 (N.D. Cal. July 19, 2017) ........................................................24

*Waters v. Gen. Elec. Co.*,
  2010 WL 3910303 (S.D.N.Y. Sept. 29, 2010), ......................................................18

*Weiss v. Amkor Tech., Inc.*,
  527 F. Supp. 2d 938 (D. Ariz. 2007) ......................................................................18

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ..........................................................................18, 19

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..................................................................................23

**Statutes / Other Authorities**

15 U.S.C. § 78bb(a) ......................................................................................................12

15 U.S.C. § 78bb(a)(1)..................................................................................................15

15 U.S.C. § 78u–4(b)(1) .................................................................................................8

15 U.S.C. § 78u–4(b)(2) ...............................................................................................19

Exchange Act § 10(b) ...............................................................................2, 7, 12, 19

Case No. 2:24-cv-00959-AH-DFM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE
ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

Exchange Act § 28 ................................................................................................ 7, 16

Fed. R. Civ. P. 9(b) .................................................................................................... 16

Fed. R. Civ. P. 10b-5 ............................................................................................2, 7, 19

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 16

PSLRA .................................................................................................... 7, 8, 16, 19

Sarbanes-Oxley Act Section 308(a) ............................................................................ 2, 6

Urska Velikonja, *How Fair Funds Changed Public Compensation and Strengthened Sec Enforcement*, 78 Bus. Law. 667 (2023) ............................................................. 10

Urska Velikonja, *Public Compensation for Private Harm: Evidence from the SEC's Fair Fund Distributions*, 67 Stan. L. Rev. 331 (2015) ....................................... 10, 11

U.S. CONST. Art. III, § 2, cl. 1 ................................................................................. 8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

Defendant Brooge Energy Limited ("Brooge" or the "Company") respectfully submits this memorandum of points and authorities in support of its motion to dismiss the First Amended Complaint ("FAC") filed by Lead Plaintiff Bluefin Capital Management, LLC ("Plaintiff" or "Bluefin").

## INTRODUCTION

Plaintiff seeks to transform an already-resolved regulatory matter into a sprawling securities class action comprised of more than ten entity and individual defendants, most of which the Plaintiff still has not served. The underlying conduct resolved by the regulatory matter took place years ago, involved officers who have since left the Company, and has been exhaustively addressed by an independent audit committee represented by Wilmer Hale and an SEC-required ethics and compliance consultant. Further, Brooge and two former officers have irrevocably paid $5.2 million into an SEC-created "Fair Fund" that will soon be distributed to any harmed investors. Plaintiff apparently commenced this action on the presumption that this regulatory settlement would have no legal ramifications on a "copycat" securities class action. Plaintiff is wrong.

This case arises from an investigation by the SEC into the process by which Brooge, certain of its former officers and employees and its independent external auditors recognized revenue from customer contracts for oil storage facilities and related services. Two different sets of external auditors from Ernst & Young and PriceWaterhouseCoopers ("PwC") initially issued clean audit opinions. Brooge thereafter formed a special audit committee, retained outside counsel and an accounting forensics firm to conduct an exhaustive internal investigation, and in April 2023 restated its historical financial statements.

On December 22, 2023, the SEC announced the resolution of its investigation and issued an order ("Administrative Order") fully resolving the SEC's unproven allegations against Brooge and two of its executives, former CEO Nicolaas Lammert Paardenkooper and former Chief Strategy Officer, Lina Saheb (with the Company,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

collectively, "Respondents"). Respondents admitted no fault in the matter. The SEC alleged that Paardenkooper and Saheb knew, or were reckless in not knowing, that the Company was allegedly recognizing revenue through a series of supposedly unsupported transactions involving an affiliated or related party, which the SEC characterized as "accounting fraud." Without admitting or denying the SEC's allegations, Respondents agreed to pay a civil penalty of $5.2 million, which the SEC used to create a Fair Fund under Section 308(a) of the Sarbanes-Oxley Act. On January 28, 2025, the SEC formally approved a distribution plan so the $5.2 million (plus interest) could be distributed to any investors who traded the Company's stock between December 20, 2019, and December 21, 2023, and could demonstrate a trading loss.

As a result of that Fair Fund, to the extent Plaintiff and the proposed class have suffered any losses as a result of the alleged wrongdoing, they now stand to be fully compensated. The $5.2 million will be more than sufficient to compensate the entire proposed class – and will certainly suffice to compensate Plaintiff. Significantly, the FAC does not even attempt to allege otherwise. The Fair Fund thus eliminates any case or controversy between Brooge, Plaintiff and the proposed class, meaning this Court lacks Article III jurisdiction to adjudicate this putative securities class action.

Further, despite being seventy-six pages long (excluding "appendices"), the FAC contains virtually no well-pled, independently investigated allegations regarding the purported wrongdoing, the Fair Fund, corrective disclosures, loss causation, damages or scienter. Rather, most of the allegations in the FAC duplicate and repackage the unproven allegations in the Administrative Order and then repetitively quote various snippets from the Company's SEC filings. Based on these allegations, the FAC asserts claims against Brooge, certain of its current and former officers, former officers of the special purpose acquisition company ("SPAC") with which Brooge merged and Brooge's auditors under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The FAC also asserts a "controlling person" claim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

against certain of Brooge's current and former officers although it has not served a single one of them (nor Brooge's auditors).[1]

Plaintiff's efforts to piggyback a shareholder class action onto unproven allegations in the Administrative Order are misguided. First, as the "Loss Analysis" Plaintiff filed with this Court confirms (ECF 19-3), Plaintiff suffered no economic loss as a result of alleged fraud. Plaintiff claims it lost $592,263.53 from selling warrants in Brooge. But all of those sales transactions occurred by August 18, 2022 – **before** the alleged "corrective disclosures" identified in the FAC. *Id.* While Plaintiff claims it also sold a small number shares of Brooge common stock after the alleged "collective disclosures," its Loss Analysis shows that Plaintiff **actually generated a $281,379.85 gain** from trading that common stock. *Id.* Further, every sale transaction by Plaintiff for common shares occurred **before** the only arguably relevant "correct disclosure" – the December 22, 2023 announcement of the Administrative Order. *Id.*

Second, even putting aside this fatal defect, Plaintiff's case remains dispositively flawed for lack of Article III standing and mootness. Assuming *arguendo* that Plaintiff suffered a trading loss attributable to any alleged fraud – and it did not – Plaintiff stands to be fully reimbursed for that loss via the $5.2 million Fair Fund. Accordingly, Plaintiff has suffered no injury in fact and the pending reimbursement will moot any remaining live controversy. Relatedly, Plaintiff's attempt to recover twice for the same alleged harm – once via the Fair Fund and again through this class action – is foreclosed by settled law barring double recoveries. That prohibition against double recoveries is also embedded in the Exchange Act, as Section 28(a) expressly limits plaintiffs to "actual damages." Because neither the Plaintiff nor the proposed class can recover more in this Court than they already stand to receive as a result of the regulatory settlement, the extremely expensive machinery of the civil justice system is unnecessary to vindicate the purported interests of the Plaintiff and proposed class.

---

[1] In parallel to this Motion to Dismiss, Brooge brings a motion to modify the briefing and hearing schedule on this motion or, in the alternative, to stay proceedings until Plaintiff serves all of the Defendants it named in this action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

Third, even if the Plaintiff sold shares after the alleged corrective disclosure (and it did not), the FAC would still fail to plausibly allege loss causation. Plaintiff initially relies on purported "corrective disclosures" that consist of nothing more than the Company announcing Pardenkooper's resignation and a letter from PwC – issued at the Company's request – discussing disagreements about audit procedures. Neither of these events reference the revenue recognition issues or otherwise revealed any "truth" about alleged accounting fraud. The FAC also alleges the December 22, 2023 Administrative Order was a corrective disclosure causing the price of the stock to decline over two trading days from $3.34 to $2.75 on December 27, 2023. But the FAC arbitrarily cherry picks December 27 as the cutoff for the class period, attempting to elide the stock's immediate rebound and then price surge above $3.34 within a matter of trading days. This fleeting dip and sharp rebound is hardly indicative of a purported "corrective disclosure."

Finally, Plaintiff fails to plead scienter as to Brooge. Its lengthy scienter allegations – as to unserved individual defendants – are no substitute for substance, as these allegations have not been verified by any independent due diligence. Instead, Plaintiff simply lifted them from the Administrative Order's unproven allegations. Amidst these voluminous but legally deficient scienter allegations as to the Individual Defendants, Plaintiff dedicates just four paragraphs as to Brooge's purported scienter. These four paragraphs attempt to invoke "corporate scienter," but that is not a form of scienter the Ninth Circuit recognizes. Plaintiff also attempts to plead scienter through the "core operations doctrine," but this requires pleading either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations or witness accounts demonstrating that executives had factual involvement in creating false reports. Plaintiff does neither, and for all of the above reasons it fails to plead scienter as to Brooge.

For these reasons, as set forth in greater detail below, the FAC should be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

**STATEMENT OF FACTS**

Brooge is an oil and gas company that operates out of the United Arab Emirates, providing oil storage, heating, and blending services. FAC (ECF 46) ¶¶ 14-15, 49. In December 2019, privately-held Brooge went public via a "de-SPAC" when it completed its business combination with Twelve Seas Investment Company. *Id.* ¶ 36.

Plaintiff purports to bring a class action on behalf of investors who traded Brooge's stock between November 25, 2019, and December 27, 2023 (the "Class Period"). *Id.* ¶ 1. The core allegations in the FAC are sourced from the December 22, 2023 Administrative Order. Based on that order, Plaintiff alleges that two former executives of the Company, Pardenkooper and Saheb, engaged in a fraudulent scheme to overstate the Company's revenues. *Id.* ¶¶ 49-58. The FAC alleges that Brooge's external, independent auditors PwC and Ernst & Young – which the FAC also names as Defendants – issued clean audit opinions during the Class Period. *Id.* ¶¶ 63-64.

The FAC purports to identify three corrective disclosures. First, on December 8, 2022, the Company disclosed Paardenkooper's resignation via a Form 6-K. FAC ¶ 123. The Form 6-K does not provide any reason for Paardenkooper's resignation, nor otherwise allege any of the revenue recognition issues. *See* Declaration of Benjamin W. Turner ("Turner Decl.") Ex. A.

Second, on January 20, 2023, a letter from PwC – made at the request of Brooge – was included as an exhibit in a Form 6-K. FAC ¶ 124; Turner Decl. Ex. B. The Form 6-K notes that, "[a]s previously disclosed, on December 29, 2022, [PwC] … tendered its resignation, effective immediately" and that Brooge "furnished a copy of the disclosures made in the Report of Foreign Private Issuer on Form 6-K ('Report') furnished to the Securities and Exchange Commission ('SEC') on January 5, 2023 to PwC and requested that PwC furnish us with a letter addressed to the SEC stating whether PwC agrees with the disclosures in the Report or, if not, stating that with which it does not agree." Turner Decl. Ex. B. The Form 6-K further states, "The Board of Directors continues to have full faith and confidence in management and note that its

recently adopted remediation plan is being implemented for the benefit of all stakeholders." *Id.* The attached letter from PwC sets forth its disagreements with certain statements made by the Company in a January 5, 2023 Form 6-K announcing that PwC had resigned. Turner Decl. Ex. B.

Third, on December 22, 2023, Brooge issued a Form 6-K after hours announcing its settlement with the SEC (Turner Decl. Ex. C), and the SEC issued the Administrative Order the same day. Turner Decl. Ex. D. The next trading day, December 26, Brooge's stock closed at $2.97 on a thin volume of 36,222 shares. Turner Decl. Ex. I. It closed slightly lower the following day on December 27, before immediately rebounding and closing at $3.96 on January 2, 2024. *Id.*

The December 22, 2023 Administrative Order resolved the SEC's allegations against Respondents, who did not admit or deny the SEC's allegations. Turner Decl. Ex. D.[2] The Administrative Order required that Brooge retain "a qualified independent ethics and compliance consultant … with extensive experience in developing, implementing and overseeing organizational compliance and ethics programs, not unacceptable to the Commission staff, to conduct an ethics and compliance program assessment," who must report to the SEC and issue recommendations that Brooge must adopt and implement. *Id.*

The SEC also collected a penalty of $5 million from the company and $100,000 from each of Pardenkooper and Saheb. *Id.* Pursuant to Section 308(a) of the Sarbanes-Oxley Act, the SEC created a Fair Fund to distribute the $5.2 million to any harmed investors. *Id.* The $5.2 million has since been deposited into a Commission-designated account at the U.S. Department of the Treasury, with accrued interest being added to the Fair Fund. Turner Decl. Ex. E. On November 26, 2024, the SEC published a Notice

---

[2] The FAC references and cites the Administrative Order but does not attach it or link to it. *See, e.g.*, FAC ¶ 73. The Administrative Order can be found at: https://www.sec.gov/files/litigation/admin/2023/33-11260.pdf and is also attached as Exhibit D to the Turner Declaration. On a motion to dismiss, the Court may examine "documents incorporated into the complaint by reference," such as the December 22, 2023 Administrative Order. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting *Tellabs, Inc.*, 551 U.S. at 322).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

of Proposed Plan of Distribution and Opportunity for Comment, posted the proposed Plan of Distribution and provided an opportunity to comment on the proposed Plan of Distribution by all potentially affected constituencies, including Plaintiff. Turner Decl. Ex. F.

The proposed Plan of Distribution provides for the distribution of the Fair Fund to investors who purchased Brooge common stock between December 20, 2019, and December 21, 2023, inclusive, "and suffered net trading losses due to the [alleged] misconduct" of the Respondents. *Id.* On January 28, 2025, the SEC issued an order approving the Plan of Distribution. Turner Decl. Ex. G. Reflecting the limited impact (if any) on investors, when the consent order was announced, the SEC's Chief of the Complex Financial Instruments Unit explained that "we were able to stop this accounting and offering fraud in its tracks ***before*** domestic investors suffered significant harm." Turner Decl. Ex. H (emphasis added).

The Administrative Order provides that, in any related securities action, Respondents "shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any ***award*** of compensatory damages by the amount of any part of their payment of a civil penalty in this action" but that if a court grants "such a Penalty Offset," Respondents will notify the SEC and pay the amount of the Penalty Offset to the SEC. Turner Decl. Ex. D (emphasis added). While this language addresses offsets in the event of an actual damages award, it does not purport to narrow pleading requirements under the PSLRA, alter Section 28 of the Exchange Act, eliminate essential elements of a Rule 10b-5 claim or expand Article III jurisdiction.

## **ARGUMENT**

### I.    **Legal Standard**

To establish a successful claim under § 10(b) and Rule 10b-5, Plaintiff must show: "(1) a material misrepresentation or omission; (2) scienter (*i.e.*, a wrongful state of mind); (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation (often established in 'fraud-on-the-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

market' cases via a presumption that the price of publicly traded securities reflects all information in the public domain); (5) economic loss; and (6) loss causation." *Loos v. Immersion Corp.*, 762 F.3d 880, 886–87 (9th Cir. 2014) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

A federal securities fraud suit is also subject to the pleading requirements of the PSLRA. *See in re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999). Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

## II.    There Is No Article III Jurisdiction Because Plaintiff And The Rest Of The Proposed Class Will Be Fully Compensated Via The Fair Fund

Even assuming, *arguendo*, that the FAC has pled a viable theory of liability that could entitle Plaintiff to recover monetary relief, this entire action has been extinguished, or rendered moot, by the regulatory settlement, and this Court lacks Article III jurisdiction to adjudicate Plaintiff's claims.

Article III standing is an "essential and unchanging part" of the Constitution's case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); see also U.S. CONST. Art. III, § 2, cl. 1. To establish Article III standing, a plaintiff must show that it "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *see also Lujan*, 504 U.S. at 560–61.

In a similar vein, "mootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

*Geraghty*, 445 U.S. 388, 397 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). "A case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome' of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "The phrases 'legally cognizable interest' and 'injury in fact' are for all practical purposes synonymous," even though the former "is often used to describe Article III's case or controversy requirements when mootness is at issue" and the latter "is often used to discuss these requirements when standing is at issue." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 n.7 (9th Cir. 2001) (quoting *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997); additional citations omitted). A case that was once cognizable under Article III becomes moot when "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

Under either doctrine, where a plaintiff has actually received all of the relief he or she could receive on the claim through further litigation, the court lacks jurisdiction over that claim. *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144–45 (9th Cir. 2016) (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)) ("a lawsuit – or an individual claim – becomes moot when a plaintiff ***actually receives*** all of the relief he or she could receive on the claim through further litigation"). This includes claims for which a plaintiff has received a full refund or reimbursement. *See Luman v. Theismann*, 647 Fed. App'x 804, 806–07 (9th Cir. 2016) (citations omitted) (because plaintiff had received a monetary refund, he no longer met the injury-in-fact requirement); *Berry v. Webloyalty.com, Inc.*, 517 Fed. App'x 581, 582 (9th Cir. 2013) (because plaintiff had been fully compensated for charges against his debit card, he lacked Article III standing); *Mirabadi v. Select Portfolio Servicing, Inc.*, 2024 WL 1151673, at *3–4 (C.D. Cal. Feb. 13, 2024) (dismissing plaintiff's claims for lack of standing because defendant had already repaid plaintiff); *Aguilar v. Nat'l Prod. Workers Union*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

*Severance Tr. Plan*, 2019 WL 9514732, at \*3 (C.D. Cal. Nov. 1, 2019) (dismissing claims for lack of standing because full principal plus interest was repaid, and there was no longer an injury-in-fact).

Because the named plaintiff and the proposed class stand to receive their alleged losses through the $5.2 million Fair Fund, no case or controversy remains between the class plaintiffs and Brooge. *See* Urska Velikonja, *Public Compensation for Private Harm: Evidence from the SEC's Fair Fund Distributions*, 67 Stan. L. Rev. 331, 363 (2015) (referencing empirical evidence and study of fair funds and observing that "eligible participants who filed claims with the fund administrator were fully compensated for their losses in several fair fund distributions"); Urska Velikonja, *How Fair Funds Changed Public Compensation and Strengthened Sec Enforcement*, 78 Bus. Law. 667, 671 (2023) (recognizing the "robust compensation infrastructure" behind Fair Funds); Barbara Black, *Should the Sec Be A Collection Agency for Defrauded Investors?*, 63 Bus. Law. 317, 318–19 (2008) ("[The SEC] has established Fair Funds in a number of high-profile cases involving financial fraud by corporate defendants, and it has taken pride in the large amounts of money it has obtained for distribution to investors."). With Bluefin poised to be fully compensated for any purported losses via the Fair Fund, to otherwise "express an opinion upon the merits of [its] contentions would be to ignore [a] basic limitation upon the duty and function of the Court, and to disregard principles of judicial administration long established and repeatedly followed." *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Mo.*, 361 U.S. 363, 367–68 (1960).

It is certainly the case that the $5.2 million Fair Fund has or will fully compensate Bluefin – which does not allege that it has disclaimed any entitlement to reimbursement from the Fair Fund and has not and cannot allege that its purported losses even approximate a fraction of the $5.2 million available to investors. Thus, at the very minimum, the named plaintiff lacks standing, if not the entire class. This alone warrants dismissal because a court is "powerless" to preside over a class action "if it lacks

jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 40 n.20 (1976)).

The Administrative Order's language purporting to prohibit a "Penalty Offset" does not alter this conclusion. *See* Velikonja, *supra*, 67 Stan. L. Rev. at 365 ("Despite the prohibition against offsetting the civil fine, defrauded investors cannot receive in a subsequent class action settlement damages that would exceed their uncompensated losses. Where investors have been fully compensated from the fair fund, it is possible that a court would dismiss the parallel lawsuit."). The SEC, no more than Congress, can expand the standing limitations imposed upon the judiciary by Article III. *See Union Pac. R.R. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 84 (2009) (administrative agency cannot contract statutory grant of jurisdiction); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (finding that, while Congress may expand prudential standing to the full extent permitted by Article III through statute, it may not abrogate the Article III minima); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008) ("As the Supreme Court has explained, 'the question of standing is not subject to waiver'") (quoting *U.S. v. Hays*, 515 U.S. 737, 742 (1995)).

Accordingly, Plaintiff must independently satisfy the requirements of Article III. And Plaintiff must make this showing *now*, at this threshold stage of the litigation. *Lewis*, 494 U.S. at 480 ("reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements . . . obtained"); *N.C. v. Rice*, 404 U.S. 244, 246 (1971) ("the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction"). Plaintiff cannot satisfy this burden – and no justiciable case or controversy exists between it and Brooge – because the $5.2 million Fair Fund more than suffices to fully compensate it for any purported loss.

Even if the Court were not inclined to fully dismiss the case, the fact that Bluefin and the rest of the class will be fully compensated should be thoroughly explored before

the parties spend millions of dollars or more on litigation that could exceed the jurisdiction conferred under Article III. Thus, if the Court is not inclined to dismiss this case for lack of Article III jurisdiction, it should exercise its broad discretion to stay this action until the SEC has fully distributed the Fair Fund, including any funds to which Bluefin would be entitled. This is a situation in which the SEC will, at the bare minimum, "remedy some of the [alleged] wrongs inflicted and hence reduce the damages allegedly suffered by [plaintiffs]," and for this reason alone, a stay is warranted. *MFS Secs. Corp. v. NYSE, Inc.*, 277 F.3d 613, 621 & n.7 (2d Cir. 2002) (staying proceedings under primary jurisdiction doctrine pending SEC review where SEC action had potential to moot antitrust claim).

### III.    Apart From Article III Jurisdiction, Plaintiff's Lack Of Damages Is A Dispositive Pleading Defect

Beyond the jurisdictional defects, the FAC is flawed at a basic pleading level by failing to allege facts showing that Plaintiff suffered any actual economic loss. "A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." *Dura Pharm., Inc.*, 544 U.S. at 338. In this regard, "Section 10(b) claims for damages are governed by Section 28(a), which limits all claims brought under the Exchange Act to actual damages." Ninth Cir. Model Civ. Jury Instr. 18.9 Comment; *see also Dura*, 544 U.S. at 344 (common-law-fraud roots of private securities fraud actions require a plaintiff to "show actual damages"). Section 28(a) provides that "[n]o person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a ***total amount in excess of the actual damages*** to that person on account of the act complained of." 15 U.S.C. § 78bb(a) (emphasis added).

### A.    Plaintiff's Own "Loss Analysis" Confirms It Suffered No Economic Loss Attributable To Any Alleged Fraud

The FAC does not allege the basic facts necessary to establish damages. *Dura* emphasized that "an inflated purchase price will not itself constitute ... economic loss." 544 U.S. at 342. Instead, "stock must be ***purchased*** at an inflated price and ***sold*** at a

12                                                          Case No. 2:24-cv-00959-AH-DFM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

loss for an economic injury to occur." *Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012) (emphasis added) (citing *Dura Pharms., Inc.*, 544 U.S. at 342). To plead loss causation, a "'plaintiff must show that after purchasing [its] shares and ***before*** selling, the following occurred: (1) "the truth became known," and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated.'" *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (quoting *In re BofI Holding, Inc. Secs. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020)). "It is only ***after*** the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a 'loss' that is actionable. . . ." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006) (emphasis added).

Plaintiff cannot make this showing because it sold Brooge warrants at a loss ***before*** the alleged truth became known. According to the FAC, that "truth" was not disclosed until December 8, 2022, at the earliest, when the Company announced Pardenkooper's resignation. FAC ¶ 123. But Plaintiff had already sold all of its Brooge warrants before this disclosure on August 18, 2022. *See* Dkt. No. 19-3 at 47 (trading history showing sale of all Brooge warrants). Plaintiff thus cannot show that it suffered a loss causally connected to the alleged fraud. *See MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1248 (11th Cir. 2023) (lead plaintiff could not establish loss causation where it sold its shares "before the relevant truth 'leaked out'") (citing *Dura Pharms., Inc.*, 544 U.S. at 342); *Glaser*, 464 F.3d at 479 (affirming dismissal for failure to plead loss causation because plaintiffs "had already sold all their [] shares" by time alleged truth was revealed).

The Eleventh Circuit in *MacPhee* addressed this issue. There, the lead plaintiff alleged an accounting fraud revealed through "a series of partial corrective disclosures," beginning with disclosures about investigations and ending with an announcement that the company had to restate its financials and that various officers had resigned. 73 F.4th at 1230, 1234. Though the lead plaintiff owned stock when the investigations were

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

reported in earlier, "partial" disclosures, loss causation could not be pled because plaintiff sold its shares before the key, final announcement. *See id.* at 1248 (whether earlier "announcement of an investigation" could "qualify as partial corrective disclosure" did not matter because plaintiff sold stock before disclosure of "'finding of fraud or wrongdoing'") (quoting *Meyer v. Greene*, 710 F.3d 1189, 1201 n.13 (11th Cir. 2013)).

The same applies here. Plaintiff may have owned shares during the proposed class period, but its sale of its stock before the truth was allegedly revealed in December 2022 means its losses cannot be causally connected to the alleged fraud. *See Gru v. Axsome Therapeutics, Inc.*, 2023 WL 6214581, at *5 (S.D.N.Y. Sept. 25, 2023) (no loss causation where lead plaintiff sold stock months before last corrective disclosure).

A related defect is that Plaintiff is not even a member of the putative class it purports to represent. Plaintiff's alleged losses are the result of selling Brooge **warrants**, rather than Brooge common stock. ECF 19-3 at 2, 49, 105. Plaintiff pleads that the proposed class, however, is "all persons and entities other than Defendants that purchased or otherwise acquired Brooge **common stock** between November 25, 2019, and December 27, 2023, inclusive. . . ." FAC ¶ 1 (emphasis added). Bluefin cannot represent a class for which it is not a member. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (quoting *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

### B.      Plaintiff Cannot Obtain A Double Recovery

The FAC's pleading deficiencies with respect to loss causation are particularly problematic here because, as explained above, the $5.2 million Fair Fund ensures that Plaintiff will be fully compensated for any loss. As the Plaintiff has or will be made whole through the Fair Fund, any further recovery for the same injuries alleged in the Administrative Order via this action would constitute an impermissible double recovery. Any such double recovery is foreclosed as a matter of law. "[I]t 'goes without

saying that the courts can and should preclude double recovery by an individual.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 333 (1980)). "A plaintiff may not recover twice for the same injury." *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992) (citations omitted).

This is true under common law, the Exchange Act and other federal statutory schemes. *See Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, 73 F. Supp. 3d 1206, 1218 (N.D. Cal. 2014) ("double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited") (quotation omitted); *see also* 15 U.S.C. § 78bb(a)(1) (barring recovery of "a total amount in excess of the actual damages to that person on account of the act complained of"); *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 642 (7th Cir. 2011) ("A judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law."); *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1375 (9th Cir.1996) (shareholder of corporation cannot recover directly for antitrust violations, because such would amount to double recovery.); *Murphy v. Gallagher*, 761 F.2d 878, 885 (2d Cir. 1985) ("section 28(a) [of the Exchange Act] expressly prohibits double recovery"); *People v. Chevron Corp.*, 872 F.2d 1410, 1414 (9th Cir. 1989) (cautioning district court in antitrust action to ensure "plaintiff is not permitted double recovery" for "two different claims for the same injury"); *Stein v. United Artists Corp.*, 691 F.2d 885, 895 (9th Cir. 1982) (prohibiting creditors and guarantors of a corporation from recovering separately on antitrust claims, because double recovery would result); *S.E.C. v. Drexel Burnham Lambert, Inc.*, 956 F. Supp. 503, 508 (S.D.N.Y. 1997) (barring recovery because plaintiff had "already recovered all damages that could be attributed to the violations proved" and "would therefore realize a double recovery if he received any part of the [payment]"), *aff'd sub nom. SEC v. Fischbach Corp.*, 133 F.3d 170 (2d Cir. 1997).[3]

---

[3] Bipartisan commentators have likewise observed the risk of improper double recoveries absent appropriate limitations. *See* Comm. on Cap. Mkts. Regulation, Interim Report Of The Committee On Capital Markets Regulation 82 (Nov. 30, 2006), available at https://capmktsreg.org/wp-content/uploads/2022/11/Interim-Report-of-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

Brooge has ***irrevocably*** paid a sufficient amount to the SEC, to be distributed pursuant to an SEC-approved plan of distribution, to completely satisfy certainly Bluefin's claim, if not the entire class – and the FAC does not allege otherwise. Because the FAC does not plead any theory of damages distinct from any losses that will be fully compensated through the Fair Fund, dismissal is required under Rule 12(b)(6). *Compare* FAC ¶ 1 (proposed class consists of owners of Brooge common stock between November 25, 2019, and December 27, 2023) *with* Turner Dec. Ex. F at 3 (Fair Fund is available to owners of Brooge common stock between December 20, 2019, and December 21, 2023). Again, the standard reservation language regarding a "Penalty Offset" in the Administrative Order does not alter this conclusion. Turner Decl. Ex. D at 13. No jury verdict has been entered and Brooge is not seeking an "offset" against a damages ***award***. The SEC cannot override Section 28, settled law against double recovery, PSLRA and Rule 9(b) pleading requirements, nor the essential elements of a 10b-5 claim.[4]

The Fair Fund thus presents a dispositive pleading defect that the FAC's allegations fail to address. In particular, the FAC fails to plausibly allege that Plaintiff – or the proposed class – still have "actual damages" beyond what they have received or will receive via the Fair Fund. The FAC offers no allegations regarding distributions via the Fair Fund; no allegations as to whether Bluefin or other class members will be fully compensated via the Fair Fund; and no allegations as to whether Bluefin or other class members will waive their rights to seek compensation via the Fair Fund. Accordingly, the FAC fails to plead an actual economic loss, without which there is no viable 10b-5 claim. *See In re Snap Inc. Secs. Litig.*, 2021 WL 667590, at *2 (C.D. Cal.

---

the-Committee-on-Capital-Markets-Regulation-1.pdf ("At present, however, there are no limitations on recoveries in concurrent, private lawsuits even after the SEC has made a Fair Funds distribution, raising the possibility of a wasteful double–recovery by shareholders.").

[4] The Supreme Court has recognized that the SEC's power to collect penalties and distribute the funds to harmed investors counsel against undue expansion of 10b-5 liability. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 166 (2008) ("The enforcement power is not toothless. Since September 30, 2002, SEC enforcement actions have collected over $10 billion in disgorgement and penalties").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

Feb. 18, 2021) (securities laws are meant "to protect [investors] against those economic losses that misrepresentations ***actually cause***") (emphasis added).

### C. Plaintiff Fails To Identify An Actionable "Corrective Disclosure"

Yet another fatal defect in Plaintiff's loss causation theory is its failure to plead facts showing the essential causal connection between the claimed fraud, *i.e.*, Brooge's misstated revenues, and any losses incurred by Plaintiff. *See Dura Pharms., Inc.*, 544 U.S. at 347. To plead "loss causation" under *Dura*, the FAC must show that Brooge's stock price dropped when the "truth" regarding the misstated financial statements was revealed to the market. *Id.* The FAC simply cannot make this connection.

The first purported "corrective disclosure" the FAC alleges is the announcement of Pardenkooper's resignation. FAC ¶ 123. But the announcement does not explain why Pardenkooper stepped down or otherwise tie the resignation to the revenue recognition issue. *See* Turner Decl. Ex. A. An announcement of an executive resignation does not in itself constitute a corrective disclosure sufficient to establish loss causation. *See Muhammad v. China Sky One Med., Inc.*, 2014 WL 12558003, at *7 (C.D. Cal. July 14, 2014) (series of announcements that CFO was resigning for health reasons and that two other officers and 26 middle managers were resigning did not establish loss causation); *In re Odyssey Healthcare, Inc. Secs. Litig.*, 424 F. Supp. 2d 880, 887–88 (N.D. Tex. 2005) (announcement of CEO resignation was insufficient to establish loss causation even where company tied the resignation to operational challenges).

The second purported "corrective disclosure" the FAC alleges is a letter from PwC – prepared at the request of Brooge – explaining where PwC agreed and disagreed with an earlier Form 6-K the Company filed regarding PwC's resignation. FAC ¶ 124; Turner Decl. Ex. B. The letter does not "disclose" for the first time or otherwise explicitly discuss any of the alleged fraud – there are no express references to "fabricated" revenue, any fake invoicing scheme, or alleged "take-or-pay" contracts with an affiliated entity. *See* Turner Decl. Ex. D.

The third purported "corrective disclosure" is the December 22, 2023 Administrative Order (FAC ¶ 127, Turner Decl. Ex. D), but the FAC does not plead a statistically significant stock price decline following that disclosure. While the FAC alleges Brooge's stock price declined from $3.34 on December 22, 2023, to $2.75 on December 27, 2023, the FAC omits that the stock immediately rebounded to $2.85 on December 28, $3.68 on December 29 and then to $3.96 on January 2. Turner Decl. Ex. I. The FAC also omits that the trading volume on December 26 and 27 was barely more than 54,000 shares. *Id.* Even assuming 100% of that trading volume consisted of class members selling shares in response to the announcement – an unrealistic assumption given that daily trading volume could include wash trading, purchases or other non-actionable trades – this would amount to just a difference of $32,380.97 in total share value from the closing price on December 22.

That figure hardly has the makings of a securities class action and, in any event, the FAC's allegations and judicially noticeable facts conclusively establish ***negative*** loss causation because "the stock price actually increased" after the alleged "corrective disclosure was issued." *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007) (finding no loss causation); *Waters v. Gen. Elec. Co.*, 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010), *aff'd sub nom. GE Inv'rs v. Gen. Elec. Co.*, 447 Fed. App'x 229 (2d Cir. 2011) ("The Court cannot find, and Plaintiffs have not cited, a single [Rule] 10b-5 case in which the plaintiff prevailed on a motion to dismiss when the stock price increased after an announcement revealing an alleged fraud."); *cf. In re BofI Holding, Inc. Secs. Litig.*, 977 F.3d at 790 (loss causation requires "show[ing] that the disclosure of the truth caused the company's stock price to decline").

Instructive here are the Ninth Circuit's decisions in *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008), and *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021). In *Metzler*, the defendant's stock price dropped by 10% after the relevant disclosure, but the Ninth Circuit held this was insufficient to plausibly establish loss causation, in part because the stock recovered within three trading days

after "the modest 10% drop." 540 F.3d at 1064. In *Wochos*, the stock declined the day after the disclosure but "immediately rebounded . . . over the next week." 985 F.3d at 1198. Relying on *Metzler*, the court in *Wochos* found this pattern inadequate to establish causation because "[t]he quick and sustained price recovery after the modest . . . drop refutes the inference that the alleged concealment of this particular fact caused any material drop in the stock price." *Id.*

Just like in *Metzler* and *Wochos*, "[t]he quick and sustained price recovery" after the initial decline "refutes the inference that the alleged concealment of [the information disclosed in the Administrative Order] caused any material drop in the stock price." *Id.*; *see also Ramos v. Comerica Inc.*, 2024 WL 2104398, at *4 (C.D. Cal. Apr. 12, 2024) (no loss causation in part because company's stock price "fully recovered" over the next two trading days); *Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 769–71 (D. Ariz. 2022) (dismissing claims under *Metzler* and *Wochos* where stock price fully recovered within four trading days).

## IV.   Plaintiff Fails To Establish Scienter As To Brooge, As Opposed To The Individual (Unserved) Defendants

The FAC also fails to plead scienter as to Brooge. The PSLRA imposes strict requirements for pleading scienter in Section 10(b) and Rule 10b-5 actions, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A defendant is liable under § 10(b) and Rule 10b-5 when it acts with scienter, which includes the "intent to deceive, manipulate, or defraud," and "deliberate recklessness." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (quoting *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)). "[A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d at 974.

That the scienter allegations against Brooge are an afterthought for Plaintiff is evident in the paucity of allegations on this point. Plaintiff offers just four boilerplate paragraphs regarding Brooge's scienter, which are legally insufficient.

### A. Plaintiff's Allegations Come From The Administrative Order, Which Cannot Be Used To Establish Scienter

Unproven allegations copied from an SEC order may not be used to establish facts to demonstrate scienter in a subsequent civil suit. *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1262–63 (C.D. Cal. 2015) ("it is well settled that allegations from other complaints or documents, which are unproved and are contested, may not be used to establish facts to demonstrate scienter") (quotations omitted). This rule applies equally to an SEC Order. *Id.* at 1263 ("There is no authority suggesting that the allegations in an SEC Order, which are unproved and contested, can properly be considered evidence of scienter."). Reliance on an SEC order is especially disfavored where, as here, the Order is one where respondents explicitly did not admit the truth of the allegations against them. *See* Turner Decl. Ex. D at 1 (respondents consented to entry of Order "without admitting or denying the findings" therein); *see also Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (declining to consider facts from an SEC Order at the pleading stage and observing that there no "'findings' upon which Plaintiffs may rely" because "in the consents filed by [defendants], they [as here] ***neither admitted nor denied the allegations against them***.") (emphasis added).[5]

Plaintiff's reliance on the Administrative Order is made all the more problematic by its decision to repeatedly reference allegations from the order without any apparent further investigation or corroboration. *See* FAC ¶¶ 73-76, 80-81, 84-85, 88, 90, 113,

---

[5] *See also In re UBS Auction Rate Secs. Litig.*, 2010 WL 2541166, at *19 n.11 (S.D.N.Y. June 10, 2010) ("Plaintiffs point out that the SEC's lawsuit and Settlement Order against [defendants]" were based in part on the same alleged misconduct. "However, in a settlement order, the respondent neither admits nor denies liability, and the order (including the theory of liability asserted therein) is not reviewed by any Article III court. Thus, their value as authority is limited.") (citations omitted).

137, 146, 190-93, 205 (citing the Administrative Order); *In re Connectics Corp. Secs. Litig.*, 542 F. Supp. 2d 996, 1006 (N.D. Cal. 2008) (striking paragraphs from complaint "because the complaint states that the information . . . was 'alleged in the SEC complaint' and because it appears that the information in these paragraphs was taken directly from the SEC complaint with no additional investigation"); *Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *4 (S.D.N.Y. Aug. 19, 2022) (plaintiff failed to allege scienter where it made no allegations itself nor "additional factual pleadings sufficient to render unproblematic the reliance on the SEC findings"); *Geinko v. Padda*, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002) (dismissing second amended complaint because "Plaintiffs merely . . . recited facts from [an SEC complaint], attached copies of those actions, and asserted that red flags emerge from those facts. Clearly, this is not enough; the hearsay allegations that Plaintiffs offer in their Amended Complaint are improper, and therefore superfluous, and they will not be considered.").

### B.    Plaintiff Alleges "Corporate Scienter," A Doctrine That Has Not Been Adopted In The Ninth Circuit And Is Not Applicable Here

Even if Plaintiff's uncorroborated scienter allegations are considered, it still fails to attribute these allegations to Brooge under either the "corporate scienter" or "core operations" doctrines.

"'In most cases, the most straightforward way to raise an inference of scienter for a corporate defendant will be to plead it for an individual defendant.'" *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (quoting *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008)). "Yet, the collective scienter (or corporate scienter) doctrine recognizes that it is possible to raise the inference of scienter without doing so for a specific individual." *Id.* (quoting *Glazer Cap. Mgmt.*, 549 F.3d at 743). That said, the Ninth Circuit has not "adopted a theory of collective scienter." *Id.* (quoting *Glazer Cap. Mgmt.*, 549 F.3d at 743); *see also Nozak v. N. Dynasty Minerals Ltd.*, 804 Fed. App'x 732, 734 (9th Cir. 2020) (the Ninth Circuit "has not adopted the corporate scienter doctrine").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

"The Ninth Circuit has held that the theory of corporate or collective scienter is available, at most, in **narrow circumstances**. . . ." *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at \*19 (N.D. Cal. Sept. 29, 2021) (citing *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d at 1063) (emphasis added). Specifically, the Ninth Circuit has limited the application of this doctrine to "circumstances in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication." *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d at 1063 (quoting *Glazer Cap. Mgmt.*, 549 F.3d at 743).

Because the Ninth Circuit has not adopted the corporate scienter doctrine, the Court should not apply it here. *See Nozak*, 804 Fed. App'x at 734; *see also, e.g.*, *In re Eargo, Inc. Secs. Litig.*, 2023 WL 5663154, at \*2 n.4 (N.D. Cal. Aug. 31, 2023) ("To the extent the Plaintiffs argue that an inference of 'corporate scienter' should apply," the Ninth Circuit has not adopted the doctrine); *Hershewe v. JOYY Inc.*, 2021 WL 6536670, at \*10 (C.D. Cal. Nov. 5, 2021) (rejecting plaintiffs' attempt to use the corporate scienter doctrine since the Ninth Circuit has not adopted the doctrine).

But even if the Court were to consider Plaintiff's corporate scienter allegations, they are still insufficient. *See* FAC ¶¶ 132, 152, 154. Essentially, Plaintiff argues that Brooge's executives were incentivized to make the allegedly false statements to secure funding and to ensure that the Business Combination closed. *Id.* ¶ 153. Courts in the Ninth Circuit have rejected these kinds of generic allegations. *See, e.g.*, *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (citation omitted) ("allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects"); *In re Arrowhead Pharms., Inc. Secs. Litig.*, 2017 WL 5635422, at \*12 (C.D. Cal. Sept. 20, 2017) ("generic allegations" attempting to infer scienter from desire to secure additional funding and lucrative partnership insufficient).

### C.    Plaintiff Fails To Specifically Plead Brooge's Scienter Under The "Core Operations Doctrine"

"[T]he PSLRA's pleading requirements may be satisfied, in certain circumstances, by 'a scienter theory that infers that facts critical to a business's "core operations" or an important transaction are known to a company's key officers.'" *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d at 1063 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783–84 (9th Cir. 2008)). This doctrine "may be considered when weighing a complaint's allegations of scienter holistically." *Id.*

"'[A]bsent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter." *Id.* (quoting *S. Ferry LP*, 542 F.3d at 784–85). "[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH*, 540 F.3d at 1068. "Proof under this theory is not easy. A plaintiff must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring . . . or witness accounts demonstrating that executives had factual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (internal citations omitted); *see also id.* at 1063 ("Missing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives."); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (allegations that senior management closely reviewed accounting numbers generated each quarter, and that top executives had several meetings where they discussed quarterly inventory numbers was insufficient to establish scienter).

Plaintiff fails to meet the Ninth Circuit's elevated standard for pleading the core operations doctrine. The most Plaintiff can do is offer conclusory allegations such as

that "facts critical to [Brooge's] 'core operations' or an important transaction" were known to Brooge's officers. *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d at 1063; *see* FAC ¶¶ 152, 154. This is entirely generic – Plaintiff does not allege either "***specific admissions*** by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "***witness accounts*** demonstrating that executives had factual involvement in creating false reports." *Intuitive Surgical, Inc.*, 759 F.3d at 1062 (emphasis added); *In re Sentinelone, Inc. Secs. Litig.*, 2024 WL 3297150, at *8 (N.D. Cal. July 2, 2024) (rejecting core operations doctrine where plaintiff pled no specific admissions of executive involvement or witness accounts). Indeed, Plaintiff's allegations are merely vague and speculative, and indicative of at most failure of corporate controls, rather than specific, detailed allegations about specified individuals' involvement in the alleged fraud. The FAC cites no witness accounts, and it merely expects the Court to make a logical leap that because the alleged misstatements happened, they were made by the Company with nefarious motive. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 3058563, at *12 (N.D. Cal. July 19, 2017) (even for a crucial part of the company's business, allegations that did not connect the individual specifically to the misstatement did not allege the core operations doctrine).

Such vague allegations are insufficient and the Court should reject Plaintiff's core operations doctrine allegations. *See In re Affirm Holdings, Inc. Secs. Litig.*, 2024 WL 3955453, at *10 (N.D. Cal. Aug. 26, 2024) ("cursory allegations" that interest rates touched on all facets of the company's business and affected its bottom line did not meet the high bar to plead the core operations doctrine); *In re Eargo, Inc. Secs. Litig.*, 656 F. Supp. 3d 928, 948 (N.D. Cal. 2023) (complaint cited "no particularized facts" that individual defendants believed or were deliberately reckless in disbelieving that insurance submissions were false or improper).

By contrast, cases where courts found that the core operations doctrine was satisfied allege far more intentional misconduct by the Individual Defendants than is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

alleged here. For example, in *In re Daou Sys., Inc.*, plaintiffs successfully pleaded the core operations doctrine where they included specific allegations that defendants ***manually adjusted*** the data that was the subject of the allegedly false statements and personally directed the accounting violations. 411 F.3d 1006, 1022–23 (9th Cir. 2005), *abrogated on other grounds by In re Genius Brands Int'l, Inc. Secs. Litig.*, 97 F.4th 1171 (9th Cir. 2024)). Similarly, in *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, plaintiffs successfully demonstrated a CEO's scienter as to false statements regarding the company's sales, where the CEO stated that all information was on one database and the ***company knew exactly*** how much it sold at all times. 380 F.3d 1226, 1231. Nothing close to these detailed, granular facts are alleged here.

## CONCLUSION

For the foregoing reasons, Defendant Brooge Energy Limited respectfully requests that the Court dismiss the FAC without leave to amend.

Dated: February 6, 2025

Respectfully submitted,

By: /s/ Perrie M. Weiner
Perrie M. Weiner
**BAKER & MCKENZIE LLP**

Stacey H. Wang
**HOLLAND AND KNIGHT LLP**

Attorneys for Defendant
BROOGE ENERGY LIMITED

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Brooge Energy Limited, certifies that this memorandum of points and authorities is 25 pages in length and complies with the 25-page limit of this Court's Standing Order, ¶ F(3), dated December 17, 2024, ECF 48 at 8.

Dated: February 6, 2025

_____
Benjamin W. Turner

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO DISMISS THE FIRST AMENDED COMPLAINT