Amanda F. Lawrence (admitted *pro hac vice*)
alawrence@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main St.
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 404-7770
Facsimile:  (860) 537-4432

*Attorneys for Lead Plaintiff*
*Bluefin Capital Management, LLC*

[Additional Counsel on Signature Page.]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BROOGE ENERGY LIMITED, et al.,<br><br>Defendants. | Case No.: 2:24-cv-00959-AH-DFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT BROOGE ENERGY LIMITED'S MOTION TO MODIFY BRIEFING AND HEARING SCHEDULE ON BROOGE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS ACTION PENDING SERVICE ON REMAINING DEFENDANTS** |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................1

II. BACKGROUND ..................................................................................3

III. Argument ...........................................................................................7

  A. The Court Should Not Modify the Briefing Schedule ................................7

    1. Good Cause Does Not Exist to Modify the Schedule .............................7

    2. Defendants' Other Justifications for Modifying the Schedule Are Speculative and Premature ......................................................................9

  B. The Court Should Not Stay This Case Pending Service of the Remaining Defendants ....................................................................................11

    1. A Stay Would Damage Plaintiff ...............................................................12

    2. Denial of a Stay Will Impose No Hardship .............................................13

    3. Judicial Economy .....................................................................................15

IV. CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulrazeq v. Embassy Republic of Libya*,
  2019 WL 13218647 (E.D. Cal. Oct. 24, 2019)......................................................14

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
  2007 WL 674691 (E.D.N.Y. Feb. 28, 2007) .........................................................13

*ASUSTek Computer Inc. v. Ricoh Co., Ltd.*,
  2007 WL 4190689 (N.D. Cal. Nov. 21, 2007) ......................................................18

*In re Baan Co. Secs. Litigation*,
  81 F. Supp. 2d 75 (D.D.C. 2000).........................................................................10

*Baja Devs. LLC v. TSD Loreto Partners*,
  2009 WL 2762050 (D. Ariz. Aug. 28, 2009) ........................................................14

*Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
  490 F.3d 718 (9th Cir. 2007) ...............................................................................12

*Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.*,
  2008 WL 1995305 (W.D. Pa. May 6, 2008) .........................................................11

*Clinton v. Jones*,
  520 U.S. 681 (1997)..............................................................................................11

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ...............................................................................12

*Conroy v. Fresh Del Monte Produce, Inc.*,
  325 F. Supp. 2d 1049 (N.D. Cal. 2004).................................................................16

*Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*,
  2010 WL 3743826 (S.D.N.Y. Sept. 24, 2010) ......................................................13

*In re Firstenergy Corp. Sec. Litig.*,
  229 F.R.D. 541 (N.D. Ohio 2004) ........................................................................10

*In re Health Management Sec., Inc. Litig.*,
  970 F. Supp. 192 (E.D.N.Y. 1997)........................................................................15

ii

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ...........................................................................7, 8

*LaSala v. Needham & Co., Inc.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005) ...................................................................13

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ......................................................................12, 15

*In re NTL, Inc. Sec. Litig.*,
   244 F.R.D. 179 (S.D.N.Y. 2007) ..........................................................................11

*Pro Stage Gear, LLC v. Donner Tech. Co.*,
   2018 WL 11224333 (E.D. Tenn. July 2, 2018) ....................................................14

*Reiger v. PricewaterhouseCoopers LLP*,
   117 F. Supp. 2d 1003 (S.D. Cal. 2000)................................................................15

*Sport Lisboa e Benfica - Futebol SAD v. Doe 1*,
   2018 WL 4043182 (C.D. Cal. Aug. 21, 2018) ..............................................14, 17

*Stand Up for California v. United States Dep't of Interior*,
   2017 WL 10620368 (E.D. Cal. Mar. 8, 2017)........................................................9

*Taylor Morrison of Cal., LLC v. First Specialty Ins. Corp.*,
   2016 WL 7626138 (C.D. Cal. Nov. 10, 2016) ........................................................8

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas and Elec. Co.*,
   2015 WL 5675861 (N.D. Cal. Sept. 28, 2015).............................................7, 9, 13

*Vetsam Biopharma, Inc. v. Enso Discoveries, LLC*,
   2019 WL 6877729 (D. Kan. Dec. 17, 2019) ........................................................16

*Villarreal v. Chrysler Corp.*,
   1996 WL 116832 (N.D. Cal. Mar. 12, 1996) .......................................................16

*WorldCom, Inc. Sec. Litig.*,
   234 F.Supp.2d 301 (S.D.N.Y.2002) .....................................................................10

**Rules**

Federal Rules of Civil Procedure

iii

Fed. R. Civ. P. Rule 4(b)......................................................................................7

Fed. R. Civ. P. Rule 16(b)...........................................................................7, 8, 13

**Other Authorities**

Urska Velikonja, *Public Compensation for Private Harm: Evidence from the SEC's Fair Fund Distributions*, 67 Stan. L. Rev. 331, 345 (2015) ...............................................................................................................17

iv

Plaintiff Bluefin Capital Management, LLC ("Plaintiff" or "Bluefin"), respectfully submits this Opposition to the Motion by Defendant Brooge Energy Limited ("Brooge"), to modify the briefing and hearing schedule on Brooge's motion to dismiss or, in the alternative, to stay this action pending service on remaining Defendants (ECF. No. 53, the "Motion" or "Mot.").[1]  As discussed below, the Motion should be denied it its entirety and this case should proceed as stipulated.

## I.    INTRODUCTION

Moving Defendants manufacture a misleading narrative to justify an unnecessary and prejudicial stay of this litigation.  They claim that a number of non-U.S.-based Defendants remain unserved because of Plaintiff's lack of diligence, and that they are unable to proceed with the case until each and every defendant has been served.  However, they previously *stipulated* to this briefing schedule for the Amended Complaint and their required response.  Further, this schedule will not cause them to suffer any hardship whatsoever.  Moving Defendants should not be allowed to hide behind their co-Defendants, shell games, or delays which they themselves created.

As discussed below, Plaintiff has been diligently attempting to serve Foreign Defendants.[2]  Indeed, Moving Defendants omit to mention that Plaintiff has requested that Brooge provide addresses for the five Foreign Defendants who were its former employees (Defendants Paardenkooper, Yammout, Masood Ali, Saheb, and Ditchburn, also referred to as the "Executive Defendants") multiple times, and though Brooge, as their former employer, undoubtedly has those addresses, it has

---

[1]    Defendant Dimitri Elkin ("Elkin," together with Brooge, "Moving Defendants"), joined in the Motion.  ECF No. 58.

[2]    "Foreign Defendants" is defined to include Defendants Nicolaas L. Paardenkooper, Saleh Yammout, Syed Masood Ali, Lina Saheb, Paul Ditchburn, Neil Richardson, and Stephen N. Cannon, as well as Ernst & Young (Bahrain) and PricewaterhouseCoopers (Dubai).  Ernst & Young and PricewaterhouseCoopers are together referred to herein as "Auditor Defendants."

1

failed to provide them.  They also omit that Brooge has not agreed to accept service for one of the Foreign Defendants (Defendant Yammout) who is not only a former employee but a current director at Brooge.  As such, Plaintiff has been left to conduct the laborious process of locating the Executive Defendants on its own, a process that must be completed before service can even be attempted.

After being obstructionist and without showing any good cause, Moving Defendants now ask the Court to extend the briefing schedule or, in the alternative, to impose an indefinite stay of the action.  During that indefinite period, though, there can be no question that the Company's assets will continue to dwindle, memories will fade, and evidence will be lost.  These fears are especially acute in this case where Brooge is in the process of consummating a sale.  Indeed, in September 2024, it was announced that a potential purchaser, Gulf Navigation – a Dubai-based shipping group – obtained board approval to acquire Brooge.[3]  Nor is the loss of records access a speculative fear.  In 2023, the Brooge board was reconstituted following a related liquidation, and the new board was actually denied access to records held at Brooge offices.[4]

The Court should therefore deny Moving Defendants' request and allow the case to proceed as Plaintiff continues its service efforts.  Doing so is the most economical, efficient, and least prejudicial way to proceed with the litigation.

---

[3]    Carpenter, Claudia, "Brooge Energy's suitor eyes its Fujairah crude, oil products storage capacity," S&P Global, Sept. 25, 2024, *available at* https://www.spglobal.com/commodity-insights/en/news-research/latest-news/shipping/092524-brooge-energys-suitor-eyes-its-fujairah-crude-oil-products-storage-capacity.

[4]    Brooge Energy Limited, "Update on material information following the events on December 27, 2023," Form 6-K, Jan. 17, 2024, *available at* https://www.sec.gov/Archives/edgar/data/1774983/000121390024004156/ea191733-6k_brooge.htm.  Though the board later regained access, the incident confirms that the loss of evidence (in a foreign and notoriously opaque jurisdiction) is not a far-flung hypothetical.

2

OPPOSITION TO MOTION TO STAY
CASE NO. 2:24-cv-00959-AH-DFM

## II.   BACKGROUND

Brooge became a publicly traded company in 2019 after merging with an existing public company, Twelve Seas Investment Co. ("Twelve Seas"), which was a special purpose acquisition company ("SPAC").   Unbeknownst to Brooge's shareholders, the proxy statement for the merger and Brooge's subsequent public filings were riddled with false and misleading statements.   The truth was only fully revealed to investors in late December 2023, when the Securities and Exchange Commission ("SEC") made public a Cease & Desist Order describing the fraud and announcing Brooge's payment of $5 million to resolve the SEC's claims.   Bluefin, along with other investors during the relevant time period (the "Class"), likely lost *hundreds of millions of dollars* as a result of Defendants' fraudulent scheme.[5]

While Moving Defendants like to stress that the case has been pending for a year, Bluefin has done everything in its power to move the case forward.   Bluefin was appointed Lead Plaintiff on July 16, 2024, (ECF No. 32), and moved quickly to serve the two U.S.-based Defendants, Brooge (served August 12, 2024) and Dimitri Elkin (served August 4, 2024).   ECF Nos. 33-34; Gordon Decl. ¶2.

Plaintiff also promptly began discussions with Moving Defendants, negotiating and entering into a stipulation with them that governs the case schedule.   During those negotiations, the issue of service of Foreign Defendants was discussed repeatedly.   Gordon Decl. ¶4.   Plaintiff and Moving Defendants filed the joint

---

[5]   Brooge's most recent Form 20-F (Amended), filed on November 12, 2024, puts the number of outstanding shares at 109,587,853.   Brooge Energy Limited, Annual Report Pursuant to Section 13 or 15(D) of the Securities Exchange Act of 1934, Form 20-F/A, filed on Nov. 12, 2024, *available at* https://www.sec.gov/Archives/edgar/data/1774983/000121390024096547/ea022035 7-20fa1_brooge.htm.   In the Amended Complaint, Plaintiff has alleged that the price declined from $10.28 per share to $2.75 per share between November 25, 2019 and December 27, 2023 (¶129) – a total loss of *$825,196,433.09* without accounting for insider ownership or shares held in escrow.   Even if only 20% of that amount were recoverable, damages would be in excess of $165 million.   In other words, damages will exceed the $5.2 million in the Fair Fund by orders of magnitude.

OPPOSITION TO MOTION TO STAY
CASE NO. 2:24-cv-00959-AH-DFM

stipulation on September 6, 2024, (the "Stipulation" or "Stip."), and the Court subsequently entered an order granting the Stipulation on September 10, 2024. ECF Nos. 43-44. Pursuant to that agreement, Plaintiff worked to file an expanded and detailed amended complaint on December 6, 2024. *See* Gordon Decl. ¶8; ECF No. 46 (the "Amended Complaint" or "AC").[6] Defendants then began attempting to get out of the stipulation on calls in January 2025, which Plaintiff did not allow. *See* Mot. at 5-6; Declaration of Benjamin W. Turner ("Turner Decl.," ECF No. 54) ¶¶11-12.

The Amended Complaint added Auditor Defendants Ernst & Young ("E&Y," a member firm of the Ernst & Young network located in Manama, Bahrain) and PricewaterhouseCoopers Limited Partnership, Dubai Branch ("PwC," a member firm of the PricewaterhouseCoopers network located in Dubai, United Arab Emirates), bringing the total number of Defendants to 11. AC ¶¶14-33. Of those, two have a U.S. presence (Defendants Elkin and Brooge),[7] six are in the U.A.E. (Defendants Paardenkooper, Saheb, Yammout, Masood Ali, Ditchburn, and PwC), one is in Bahrain (Defendant E&Y), one is in Hong Kong (Defendant Cannon), and one is in the United Kingdom (Defendant Richardson). Seven of those Defendants – those located in the U.A.E. and Bahrain – are in jurisdictions not party

---

[6]    Brooge incorrectly states that three Defendants were added in the Amended Complaint: the Auditor Defendants and Paul Ditchburn. Mot. at 4. In reality, Plaintiff added only the Auditor Defendants and removed one Defendant (Burgese Viraf Parekh). Paul Ditchburn, whom Brooge avers was added in the Amended Complaint, was already in the original Complaint. ECF No. 1 ("Compl.") ¶13; AC ¶21.

[7]    Defendant Elkin resides in Los Angeles, California. Service was effected on Brooge via its U.S. agent for process, though Brooge itself is incorporated in the Cayman Islands and its operations are based in the United Arab Emirates (U.A.E.).

4

to the Hague Convention.[8]  Against this difficult landscape, Plaintiff has been working to effectuate service, taking the following actions:

- Plaintiff's counsel contacted a group offering services relating to foreign service of process on July 31, 2024, to coordinate international service. *See* Gordon Decl. ¶3.

- Service was effected on the U.S.-based Defendants (*i.e.*, Moving Defendants) in August 2024, as noted above.  ECF Nos. 33-34.

- Plaintiff obtained home addresses for Defendants Cannon and Richardson in the United Kingdom and in Hong Kong.  Gordon Decl. ¶5.

- In October 2024, Plaintiff authorized a contractor to begin attempting service on Defendants Cannon and Richardson.  Gordon Decl. ¶5.

- In November 2024, after corresponding back and forth with the contractor regarding potential service in the U.A.E., Plaintiff learned that while the contractor could serve the Foreign Defendants, it could not first locate them as the U.A.E. lacks centralized address databases like those in the U.S.  Gordon Decl. ¶6.

- Therefore, in November and December 2024, counsel for Plaintiff corresponded with a law firm to attempt to secure services to locate the addresses of the U.A.E.-based Gordon Decl. ¶7.

- Since then, the law firm with which Plaintiff was corresponding suddenly stated it needed to cease assisting Plaintiff with its service efforts given developments in the case.  Gordon Decl. ¶10.

---

[8]    Hague Conference on Private International Law – Conférence de La Haye de droit international privé ("HCCH"), List of Contracting Parties to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (last accessed Mar. 3, 2025), *available at* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

5

- Therefore, counsel for Plaintiff has been corresponding directly with a service contractor to attempt to identify the most efficient way to proceed with service on the U.A.E.-based Defendants. Gordon Decl. ¶10.

- In the interim, in December 2024, soon after the Amended Complaint was filed, Plaintiff sent requests for waivers of service to both E&Y and PwC. Gordon Decl. ¶9. Plaintiff has not yet received a response. *Id.*

Brooge has done nothing to assist Plaintiff in its efforts to serve the remaining Defendants. In early January 2025, given the difficulties in obtaining addresses for Defendants located in the U.A.E., Plaintiff asked Brooge to provide addresses for four former officers and one current director. Gordon Decl. ¶11. Brooge has not provided this basic information. *Id.* Plaintiff renewed its request in February 2025 in writing, but Brooge has neither provided the information nor explained why it is unable to do so. *Id.* ¶12. Brooge's cooperation would be particularly helpful here as traditional means of locating individuals in the U.A.E. like "skip tracing" are not readily available. *Id.* ¶6.

On December 17, 2024, the case *Anvil Trust v. Ernst & Young*, S.D.N.Y., No. 1:24-cv-09731 was filed in the Southern District of New York. The Anvil Plaintiffs[9] bring securities and common law fraud claims against the Anvil Defendants.[10] More specifically, that case (which is not a class action), concerns solely the 2019 SPAC merger with Brooge, thus differing greatly in time period and scope from this case. It alleges that the accounting firm Ernst & Young committed fraud during that

---

[9]   The plaintiffs in the *Anvil Trust* litigation are (1) Anvil Trust, by its Trustee Neil Richardson, (2) Stephen Cannon, (3) Bryant Edwards, and (4) Neil Richardson (the "Anvil Plaintiffs").

[10]   The Defendants in the *Anvil Trust* litigation are (1) Ernst & Young, (2) Ernst & Young Middle East, (3) Ernst & Young Middle East (Abu Dhabi Branch), (4) Ernst & Young John Doe 1, (5) Ernst & Young John Doe 2, and (6) Anthony O'Sullivan (the "Anvil Defendants").

6

merger process. Two of the plaintiffs in the *Anvil Trust* action (Cannon and Richardson) are Defendants in this action.[11]

## III.    ARGUMENT

### A.    The Court Should Not Modify the Briefing Schedule

Moving Defendants first ask this Court to modify the scheduling order they agreed to – conveniently, after Plaintiff met its side of the bargain and filed the Amended Complaint in December. In particular, they ask that the Court push the remaining briefing on the pending motions to dismiss and the scheduled April hearing to a unilaterally-selected August 2025 date. Moving Defendants, however, have not met their burden and their arguments for a stay fail.

#### 1.    Good Cause Does Not Exist to Modify the Schedule

First and foremost, Moving Defendants have not met the standard to modify the stipulated briefing schedule because they have not shown good cause. "[B]ecause the Court adopted the stipulated deadline as 'so ordered,' . . . it [i]s not only a stipulation, but also a scheduling order," and governed by Rule 16 of the Federal Rules of Civil Procedure. *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas and Elec. Co.*, 2015 WL 5675861, at *15 (N.D. Cal. Sept. 28, 2015). Under Rule 16(b) of the Fed. R. Civ. P., a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). The primary factor in determining "good cause" is the diligence of the party seeking modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The Court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*

---

[11]    Moving Defendants repeatedly claim that summons have been issued in the *Anvil Trust* action. Mot. at 2, 5. However, issuance of a summons is just a predicate to service, and has no bearing on whether or not service has actually been effected or is even underway. *See* Fed. R. Civ. P. 4(b). And, upon information and belief, E&Y Bahrain has not been served in the *Anvil Trust* action. Gordon Decl. ¶13.

Moving Defendants fail to make any argument that there is "good cause" to amend the scheduling order under Rule 16(b).  Nowhere do Moving Defendants engage with the actual requirements for meeting the standard – which examines whether, despite their diligence, Moving Defendants could not reasonably comply with the scheduling order.  *See Johnson*, 975 F.2d at 609.  This omission alone is sufficient to deny their motion.  *Taylor Morrison of Cal., LLC v. First Specialty Ins. Corp.*, 2016 WL 7626138, at \*2 (C.D. Cal. Nov. 10, 2016) ("Because [the defendant] has failed to argue that there is 'good cause'… under Rule 16(b), the Court cannot grant [the defendant]'s motion.").

Additionally, Moving Defendants could not make a showing of good cause, because they cannot claim that they are unable to reasonably comply with the scheduling order despite their diligence.  *See Johnson*, 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence ***of the party seeking the [extension]***.").  Moving Defendants have already filed their motions to dismiss, and their only remaining obligations with respect to the motions are to file replies and to attend oral argument – neither of which Moving Defendants have claimed to be unable to do under the existing deadlines.  Moving Defendants' other arguments on this front relate to the potential for staggered briefing and discovery stays (discussed below).  Such arguments have no bearing on whether there is good cause under Rule 16 to extend the briefing schedule based on Moving Defendants' inability to comply with its terms.  As such, Moving Defendants fail to meet the Rule 16(b) standard to set aside a scheduling order.  They should not be allowed to succumb to what is effectively "buyers' remorse" and backtrack on the stipulated schedule.[12]

---

[12]    To the extent the request to modify the briefing and hearing schedule can be viewed as a request to alter or invalidate the stipulation (which set the deadlines that led to the current briefing and hearing schedule), this holds doubly true.  Moving Defendants entered into the stipulation voluntarily; their "attorney[s'] mere

8

## 2. Defendants' Other Justifications for Modifying the Schedule Are Speculative and Premature

Moving Defendants effectively make two arguments as to why the schedule should be modified: (i) that litigating motions to dismiss only by Brooge and Elkin would result in a staggered briefing schedules that would somehow complicate the litigation and consume resources, and (ii) that the PSLRA's automatic discovery stay would stay discovery each time a new motion to dismiss may be brought, thereby prolonging the lifespan of the litigation. In addition to being irrelevant to the good cause standard discussed above, both arguments are speculative and exaggerated and should not be countenanced.

First, as to their "staggering" argument, courts routinely permit staggered briefing schedules, and some courts have found that staggered schedules can even promote efficiency. *See Stand Up for California v. United States Dep't of Interior*, 2017 WL 10620368, at *2 (E.D. Cal. Mar. 8, 2017) ("[T]his Court has twice before imposed staggered briefing schedules in relation to the allegations underlying this action. This Court has found that such a system leads to more responsive briefing than a blind, simultaneous system of cross-motions on the same issues."). Nor is the "piecemeal" process that Moving Defendants envision a foregone conclusion. The yet to be served Defendants all fall into two groups: individuals or Auditor Defendants. It is unclear whether these groups will even decide to move to dismiss, and even if they do, they face unique issues from those of Moving Defendants.[13] Furthermore, once service is complete, Plaintiff and the remaining Defendants may

---

realization that [they] may have made a tactical error . . . does not render enforcement of the stipulation a manifest injustice." *Tesoro Ref. & Mktg. Co.*, 2015 WL 5675861, at *11.

[13]    For example, the Auditor Defendants, as discussed further herein, will rely on a different analysis and line of cases (those looking at "red flags") for scienter. Similarly, the control claims brought against Individual Defendants raise issues separate from those brought against Brooge.

9

choose to negotiate a second uniform schedule, substantially limiting the risk that the "case inefficiently proceed[s] in fits and starts."  Mot. at 1.

Second, Moving Defendants' concern about the PSLRA's automatic discovery stay is both unconvincing and entirely premature.  For one, the current automatic stay will remain in place until the Court denies the motions to dismiss in whole or in part, making these concerns premature.  If and when the stay is lifted, several factors may impact whether multiple PSLRA mandatory stays pause discovery in this action.  For example, there can be no doubt that Plaintiff will ask the Court to lift the mandatory stay if an unserved Defendant moves to dismiss and discovery is already proceeding against Moving Defendants.  Courts can and do lift mandatory stays for a number of reasons.  *See, e.g.*, *In re Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 542 (N.D. Ohio 2004) (granting "a partial lift of the stay to allow the discovery of materials already produced by FirstEnergy in related government investigations"); *WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (lead plaintiff "would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape," and "would essentially be the only major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings").

Notably, courts have lifted mandatory stays to preserve evidence where there is a heightened risk that evidence may be lost.  *See, e.g.*, *In re Baan Co. Secs. Litigation*, 81 F. Supp. 2d 75 (D.D.C. 2000).  As mentioned above, this is a real risk here: Brooge is in the process of consummating a sale which presents a significant risk that books, records, and other key evidence may be lost, altered, or become inaccessible post-acquisition, and given jurisdictional differences in record-keeping requirements and potential changes in management, there is a heightened possibility that crucial documents could be transferred, destroyed, or withheld.  Additionally, if

10

the acquiring entity imposes new data retention policies or relocates operations, access to historical financial, operational, and compliance records may become severely limited.  These risks would serve as a backbone to any potential, eventual, hypothetical motion to lift the stay.  They also underscore the importance of proceeding with this litigation expeditiously in order to secure relevant evidence as soon as possible.  *See Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.*, 2008 WL 1995305 (W.D. Pa. May 6, 2008) (defendant turned over relevant documents to the third-party purchaser as part of asset sale, which, in turn, lost or destroyed the information);  *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007) (split of company in bankruptcy, with one company proceeding as successor-in-interest and the other as a nonparty, resulted in spoliation when nonparty company, which obtained relevant documents and assets, destroyed them).  Therefore, the PSLRA discovery stay does not, by its very existence, justify modification of the stipulated schedule here.

In summary, given the Court's discretion to lift the stay, Moving Defendants have not shown good cause to delay the stipulated deadlines (which Plaintiff has met) in this case.  And, given the rapidly changing landscape at Brooge, those months until the self-selected August date could be extremely harmful.

**B.      The Court Should Not Stay This Case Pending Service of the Remaining Defendants**

Moving Defendants' alternative argument that the Court should stay the case indefinitely is equally flawed.  "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  The party seeking the stay bears the burden of establishing its need.  *Id.* at 708.  District courts must weigh "the possible damage which may result from granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in

terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity [justifying a stay] within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

In the present case, Moving Defendants do not meet this standard and a stay is not warranted. For the reasons discussed below, a stay is likely to result in significant harm to Plaintiff, Moving Defendants will not suffer any hardship absent a stay, and a stay will not serve the interests of judicial economy.

### 1.    A Stay Would Damage Plaintiff

It is Plaintiff that will suffer damage if a stay is granted. As already discussed, if this action is delayed, Plaintiff faces a substantial risk of undue prejudice and a high risk that key evidence will be lost. The indefinite nature of the requested stay only exacerbates this potential damage. In fact, the Ninth Circuit cautions against granting stays for indefinite periods of time. *See Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) ("[L]engthy and indefinite stays place a plaintiff effectively out of court.... Even if litigation may eventually resume, such stays create a danger of denying justice by delay."). The dangers of a lengthy indefinite stay certainly exist here given the service challenges discussed above. Plaintiff, despite its best and ongoing efforts, may face substantial delays in locating or serving the individual Foreign Defendants located in the U.A.E. Once home addresses (which Brooge has not provided) are located, service estimates are an additional 6 to 12 months.[14]   Gordon Decl. ¶3. Waiting for service to be

---

[14]    The inherently lengthy and burdensome service process, particularly for countries that are not a party to the Hague Convention, alone defeats Moving Defendants' argument that the length of any stay is "entirely dependent on when Plaintiff decides to effect service." Mot. at 2.

effected on all parties could put this case on hold for a year or more, while Brooge transfers ownership, records change hands, and memories fade.

In line with this reality, courts generally give weight to a plaintiff's strong interest in proceeding with its litigation, implying inherent damage in unnecessary delays. *See LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005) ("Courts are generally reluctant to stay proceedings because they are concerned with vindicating the ***plaintiff's*** right to proceed with its case." (citing *An Giang Agric. and Food Import Export Co. v. United States*, 350 F. Supp. 2d 1162, 1164 n.3 (Ct. Int'l Trade 2004)); *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 WL 674691, at *5 (E.D.N.Y. Feb. 28, 2007) ("Courts are generally reluctant to stay proceedings out of concern for a plaintiff's right to proceed with its case.").

### 2. Denial of a Stay Will Impose No Hardship

Moving Defendants will suffer no inequity or hardship from complying with a briefing schedule to which they themselves agreed. When entering into the Stipulation, Moving Defendants knew that serving Foreign Defendants would be a time-intensive process. Yet, they did not raise this issue with the Court prior to entering into the Stipulation, nor did they negotiate a contingency in the Stipulation requiring that Plaintiff serve the Foreign Defendants in order for the Stipulation to be enforceable. Moving Defendants cannot now be heard to complain about the consequences of their own actions. *Cf. Tesoro Ref. & Mktg. Co.*, 2015 WL 5675861, at *15 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief [under Rule 16(b)].").

There is no hardship to Moving Defendants under these circumstances, especially since they fail to point to any case law that supports their position that the Court should stay the action until all Foreign Defendants are served. *See Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *12 (S.D.N.Y. Sept.

24, 2010) ("denying a motion to stay where the movant had failed to cite any authority for the proposition that this Court should stay an action until all foreign defendants are served"). Instead, Moving Defendants' cited case law is either inapposite or proves Plaintiff's point. In one of their cited cases, in fact, the court, after nine months of waiting for service, temporarily separated off unserved defendants from the case and ordered it to proceed as to the served defendants. This is far from the indefinite stay Moving Defendants seek here. *Pro Stage Gear, LLC v. Donner Tech. Co.*, 2018 WL 11224333, at *1 (E.D. Tenn. July 2, 2018).[15] The other cases Moving Defendants cite in support of a stay either do not support their argument or are inapposite, involving plaintiffs that had made little or no efforts to serve the Foreign Defendants – unlike the present case, where Plaintiff has undertaken and continues to undertake significant service efforts. [16]

Finally, the other hardships claimed by Moving Defendants are speculative and disingenuous. They claim that if discovery proceeds, Plaintiff could, once service is completed on any remaining Defendants, attempt to use discovery obtained from Brooge to bolster its claims in a hypothetical further amended complaint. Mot. at 10. This risk is purely speculative and should not be preemptively litigated. Indeed, even if this eventuality were to come to fruition, the

---

[15]    The court later stayed the case on highly distinguishable grounds, finding that there "there is potential for simplification of the issues and conservation of resources if a stay were granted **pending the decision of the USPTO's review**." *Pro Stage Gear,* 2018 WL 11224333, at *3 (emphasis added).

[16]    *See Baja Devs. LLC v. TSD Loreto Partners*, 2009 WL 2762050, at *2 (D. Ariz. Aug. 28, 2009) (where Plaintiff was unable to "provide specifics of its service attempts," the court set a service deadline, after which the plaintiff was required to file a status report); *Abdulrazeq v. Embassy Republic of Libya*, 2019 WL 13218647, at *1 (E.D. Cal. Oct. 24, 2019) (action dismissed where plaintiff had missed service deadlines, failed to file a status report and "also ha[d] not demonstrated that he ha[d] attempted to serve defendant, nor has he shown cause why this action should not be dismissed for failure to timely effect service of process"); *Sport Lisboa e Benfica - Futebol SAD v. Doe 1*, 2018 WL 4043182, at *4 (C.D. Cal. Aug. 21, 2018) (declining to impose a time limit on plaintiff's service of foreign defendants where Plaintiff was making a good faith effort to serve Defendants in a timely manner).

14

appropriate route to litigate this issue would be in connection with a motion to amend (to the extent one is ever filed).  Moving Defendants also argue that "document and deposition discovery from certain unserved Defendants could prove critical to this case" (Mot. at 11) suggesting that that they will be prejudiced if the unserved Defendants are never subject to the more extensive obligations of first-party discovery.  These concerns are plainly premature, as discovery has yet to even commence.  The "necessary party" issue (*see* Mot. at 10-11) should be litigated in the context of the pending Motions to Dismiss.  Finally, their focus on the importance of Ernst & Young overlooks the fact that, in the securities context, auditors face a different and unique standard from that of the companies, with auditors and companies routinely on separate but parallel tracks.  *See, e.g.*, *Reiger v. PricewaterhouseCoopers LLP,* 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000) (noting differences for pleading securities fraud against an independent accounting firm and walking through "red flags" analysis); *In re Health Management Sec., Inc. Litig.*, 970 F. Supp. 192, 203 (E.D.N.Y. 1997) (allegations of an auditor ignoring red flags "creat[e] a 'strong inference' of . . . recklessness).

In sum, Moving Defendants fail to establish any hardship or inequity that would necessitate a stay.  Instead, it appears Moving Defendants want to postpone having to defend this lawsuit in hopes that the delay will be to their benefit.  This is not a valid reason to stay an action.  *Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.").

### 3.    Judicial Economy

Moving Defendants likewise fail to show that considerations of judicial economy weigh in favor of a stay here.  First and foremost, a stay would not make resolution of this action more efficient.  Permitting Plaintiff and Moving Defendants to resolve the motion to dismiss now will facilitate efficient case management,

prevent unnecessary delays, and provide guidance for the remaining proceedings as the scope of the case will be known.

Moving Defendants' arguments that a stay would promote judicial economy are unpersuasive. First, they claim that a stay would help resolve issues of standing. Mot. at 12. However, it is well established that jurisdictional issues should be resolved as soon as possible in a litigation. *See Conroy v. Fresh Del Monte Produce, Inc.,* 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004) (declining to stay matter where multi-district litigation was pending, and deciding motion to remand because "it is in the interest of judicial economy to decide issues of jurisdiction as early in the litigation process as possible"); *Villarreal v. Chrysler Corp.*, 1996 WL 116832, at *1 (N.D. Cal. Mar. 12, 1996) (similar).

Next, Moving Defendants argue that there is a risk of inconsistent rulings with respect to the overlapping parties in the *Anvil Trust* litigation, suggesting that Plaintiff should sit idly and wait for that case – which was filed over a year after the present action – to be resolved. Mot. at 10. Any risk of inconsistent rulings is highly speculative and would not, in any case, justify forcing Plaintiff to step aside in favor of the parties in *Anvil Trust*. Although there is some overlap in the parties and the facts, the actions do not involve identical parties or overlapping claims. As discussed above, two of the Defendants in this case are plaintiffs in the *Anvil Trust* case; that case concerns solely the SPAC merger and is not a class action; and the *Anvil Trust* case is focused exclusively on the auditors' role in the SPAC merger. A ruling on the *Anvil Trust* lawsuit would not provide meaningful guidance to the present action. *See Vetsam Biopharma, Inc. v. Enso Discoveries, LLC*, 2019 WL 6877729, at *2 (D. Kan. Dec. 17, 2019) (rejecting defendant's argument that a stay would prevent the possibility of inconsistent rulings where the parties were not identical and a resolution in one court would not obviate the need for plaintiff to seek redress with the court at issue).

OPPOSITION TO MOTION TO STAY
CASE NO. 2:24-cv-00959-AH-DFM

And to the extent Moving Defendants argue that the distribution of the penalty that Brooge and two of the other Defendants, Paardenkooper and Saheb, paid to the SEC will somehow moot this class action, that argument is both incorrect and inappropriate to resolve in the context of the instant Motion. Indeed, the argument surrounding the "Fair Fund" is the primary argument made by Brooge in its motion to dismiss and will be litigated in that context. But it is worth noting that the $5 million in the fair fund does not come close to compensating the proposed class in this case, with damages likely to be in the hundreds of millions. *See* note 5, *supra*. Moreover, the Fair Fund is designed to complement, not replace, private litigation, ensuring that investors are not unjustly limited in their ability to seek full compensation, and it is well established that Fair Funds are generally significantly smaller than the potential damages sought and obtained in class action litigation. *See, e.g.*, Urska Velikonja, *Public Compensation for Private Harm: Evidence from the SEC's Fair Fund Distributions*, 67 Stan. L. Rev. 331, 345 (2015) ("class action damages 'dwarf' the SEC's monetary sanctions").[17] Further, to the extent there is concern about double recovery, the Fair Fund already contemplates offsetting. In fact, the plan of distribution provides:

> To avoid payment of a windfall, an Eligible Claimant's distribution amount will be no larger than his, her, or its Recognized Loss ***minus the amount of any compensation for the loss that resulted from the conduct described in the Order that was received from another source (e.g., class action settlement),*** to the extent known by the Fund Administrator ("Prior Recovery").[18]

---

[17] For example, WorldCom paid a record-breaking $750 million civil fine to settle the SEC's enforcement action, yet the WorldCom class action settled for $6.15 billion; Lucent paid $25 million to the SEC but $517 million to settle the parallel securities class action. Velikonja, *supra*, 67 Stan. L. Rev. at 345.

[18] In the Matter of Brooge Energy Limited, *et al.*, Admin. Proceeding, File No. 3-21816, Plan of Distribution, *available at* https://www.sec.gov/files/litigation/admin/2025/34-102298-dp.pdf (at 3).

17

In other words, the Fair Fund is not an adequate alternative to this class action, and does not present any risk of double recovery.

Finally, even if a stay were to provide some degree of judicial efficiency, any such benefits would be outweighed by the prejudice to Plaintiff. *ASUSTek Computer Inc. v. Ricoh Co., Ltd.*, 2007 WL 4190689, at *2 (N.D. Cal. Nov. 21, 2007). As discussed above, delaying the proceedings risks unfairly disadvantaging Plaintiff while offering only speculative efficiency gains, making a stay unwarranted under these circumstances.

## IV.   CONCLUSION

For the foregoing reasons, the Motion should be denied.

DATED:  March 5, 2025                 Respectfully submitted,

                                      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                      */s/ Amanda F. Lawrence*
                                      Amanda F. Lawrence (admitted *pro hac vice*)
                                      156 S. Main St.
                                      P.O. Box 192
                                      Colchester, CT 06415
                                      Telephone: (860) 404-7770
                                      Facsimile:  (860) 537-4432
                                      alawrence@scott-scott.com

                                      Anna Hunanyan (CA 330609)
                                      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                      The Helmsley Building
                                      230 Park Ave., 24th Fl.
                                      New York, NY 10169
                                      Telephone: (212) 223-6444
                                      Facsimile:  (212) 223-6334
                                      ahunanyan@scott-scott.com

                                      Cornelia J. B. Gordon (CA 320207)
                                      John T. Jasnoch (CA 281605)
                                      **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

18

600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
cgordon@scott-scott.com
jjasnoch@scott-scott.com

**THE SCHALL LAW FIRM**
Brian J. Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Attorneys for Lead Plaintiff Bluefin Capital Management, LLC and Co-Lead Counsel*

19

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Bluefin Capital Management, LLC, certifies that this Opposition to Defendant Brooge Energy Limited's Motion to Modify Briefing and Hearing Schedule On Brooge's Motion to Dismiss Or, In the Alternative, to Stay This Action Pending Service On Remaining Defendants is nineteen pages in length and complies with the 25-page limit of this Court's Standing Order, ¶ F(3), dated March 5, 2025, docketed in this action as ECF 61.

DATED: March 5, 2025

/s/ Amanda F. Lawrence
Amanda F. Lawrence (admitted *pro hac vice*)

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of this filing via electronic means to all counsel of record.

DATED: March 5, 2025

/s/ *Amanda F. Lawrence*
Amanda F. Lawrence (admitted *pro hac vice*)

21