Perrie M. Weiner, State Bar No. 134146
perrie.weiner@bakermckenzie.com
Benjamin W. Turner, State Bar No. 256092
ben.turner@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, California  90067
Telephone:  310.201.4728
Facsimile:   310.201.4721

Stacey H. Wang, State Bar No. 245195
stacey.wang@hklaw.com
Kathryn J. Richards, State Bar No. 346956
kathryn.richards@hklaw.com
**HOLLAND & KNIGHT LLP**
400 South Hope Street, 8th Floor
Los Angeles, California  90071
Telephone:    213.896.2480
Facsimile:    213.896.2450

Attorneys for Defendant
BROOGE ENERGY LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ERIC WHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BROOGE ENERGY LIMITED F/K/A BROOGE HOLDINGS LIMITED F/K/A TWELVE SEAS INVESTMENT COMPANY, NICOLAAS L. PAARDENKOOPER, SALEH YAMMOUT, SYED MASOOD ALI, LINA SAHEB, DIMITRI ELKIN, NEIL RICHARDSON, STEPHEN N. CANNON, PAUL DITCHBURN, ERNST & YOUNG, and PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH,<br><br>Defendants. | **Case No. 2:24-cv-00959-AH-DFM**<br><br>**REPLY IN SUPPORT OF MOTION BY DEFENDANT BROOGE ENERGY LIMITED TO MODIFY BRIEFING AND HEARING SCHEDULE ON BROOGE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS ACTION PENDING SERVICE ON REMAINING DEFENDANTS**<br><br>Date:    March 26, 2025<br>Time:    1:30 p.m.<br>Ctrm:   7D, 7th Floor<br>Judge:   Hon. Anne Hwang<br><br>First Street Courthouse<br>350 W. 1st Street<br>Los Angeles, California 90012 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

ARGUMENT........................................................................................................ 3

    A.    The Court Should Modify The Briefing Schedule................................. 3

        1.    While Brooge Was Clearly Diligent In Meeting The Court's Scheduling Order, The "Good Cause" Standard Also Encompasses Broader Case Management Considerations ........................................................................... 3

        2.    Considerations Of Judicial Economy, Sensible Case Management, And Fairness To The Parties All Weigh Heavily In Favor Of Modification................................................ 6

        3.    Plaintiff's Limited Service Efforts Do Not Alter The Analysis ................................................................................. 8

    B.    In the Alternative, The Court Should Stay The Case ........................... 9

CONCLUSION................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
2007 WL 674691 (E.D.N.Y. Feb. 28, 2007) ......................................................10

*In re Baan Co. Secs. Litig.*,
81 F. Supp. 2d 75 (D.D.C. 2000)...........................................................................8

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
490 F.3d 718 (9th Cir. 2007) ..............................................................................10

*Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.*,
2008 WL 1995305 (W.D. Pa. May 6, 2008) .........................................................8

*Certified Nutraceuticals, Inc. v. Clorox Co.*,
2020 WL 6081718 (S.D. Cal. Oct. 15, 2020).......................................................5

*In re CFS-Related Secs. Fraud Litig.*,
179 F. Supp. 2d 1260 (N.D. Okla. 2001) ..............................................................8

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ................................................................................................3

*C.F. ex rel. Farman v. Capistrano Unified School Dist*,
654 F.3d 975 (9th Cir. 2011) ................................................................................5

*In re Firstenergy Corp. Secs. Litig.*,
229 F.R.D. 541 (N.D. Ohio 2004).........................................................................8

*In re Fluor Corp. Secs. Litig.*,
1999 WL 817206 (C.D. Cal. Jan. 15, 1999)..........................................................8

*In re Health Mgmt., Inc. Secs. Litig.*,
970 F. Supp. 192 (E.D.N.Y. 1997)...................................................................8, 11

*Indian Harbor Ins. Co. v. Grp. SHS LLC*,
2021 WL 4557471 (C.D. Cal. Apr. 30, 2021).......................................................4

*Jackson v. Laureate, Inc.*,
186 F.R.D. 605 (E.D. Cal. 1999)...........................................................................4

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ................................................................................. 3, 4

*LaSala v. Needham & Co., Inc.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005) ...................................................................... 10

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) .................................................................................. 11

*Maverick Gaming LLC v. United States*,
   2022 WL 3586995 (W.D. Wash. Aug. 22, 2022) ........................................................ 6

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983) .................................................................................... 5

*New York State Teacher's Ret. Sys. v. Fremont Gen. Corp.*,
   2009 WL 10675265 (C.D. Cal. Nov. 5, 2009) ............................................................ 8

*In re NTL, Inc. Secs. Litig.*,
   244 F.R.D. 179 (S.D.N.Y. 2007) ................................................................................. 8

*Rang Dong Joint Stock Co. v. J.F. Hillebrand USA, Inc.*,
   2020 WL 3841185 (E.D. Cal. July 8, 2020) ............................................................... 4

*Reiger v. PricewaterhouseCoopers LLP*,
   117 F. Supp. 2d 1003 (S.D. Cal. 2000) .................................................................... 11

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) ........................................................................... 5

*Ronduen v. The GEO Grp., Inc.*,
   2024 WL 4800670 (C.D. Cal. Aug. 26, 2024) ........................................................... 5

*Sedona Corp. v. Ladenburg Thalmann*,
   2005 WL 2647945 (S.D.N.Y. Oct. 14, 2005) ............................................................. 7

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*,
   189 F.3d 909 (9th Cir. 1999) ...................................................................................... 7

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
   495 F. Supp. 2d 1052 (S.D. Cal. 2007) ...................................................................... 5

*Stand Up for Cal. v. U.S. Dep't of Interior*,
   2017 WL 10620368 (E.D. Cal. Mar. 8, 2017) ............................................................ 7

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

*Ten Bridges LLC v. Hofstad*,
  2023 WL 7281331 (W.D. Wash. Nov. 3, 2023) ...................................................5

*Tesoro Ref. & Mktg. Co. v. Pac. Gas & Elec. Co.*,
  2015 WL 5675861 (N.D. Cal. Sept. 28, 2015)...................................................11

*United States v. Dang*,
  488 F.3d 1135 (9th Cir. 2007) .............................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002) .............................................................8, 11

**Statutes / Other Authorities**

15 U.S.C. § 78u–4(b)(3)(B) ......................................................................................7

Fed. R. Civ. P. 12...........................................................................................1, 3, 6, 10

Fed. R. Civ. P. 16..............................................................................................3, 4

Fed. R. Civ. P. 16(b) .................................................................................3, 4, 5, 6

Fed. R. Civ. P. 16(b)(4) .....................................................................................4

PSLRA ...............................................................................................*passim*

# **INTRODUCTION**

Plaintiff's opposition offers no compelling reason to force this case forward in piecemeal fashion while, more than a year after this action was commenced, nine of eleven Defendants remain unserved.[1] Brooge's motion seeks a modest modification to the Rule 12 briefing schedule or a limited, temporary stay, to ensure a single cohesive briefing schedule for all Defendants. This approach is not only more sensible from a case management perspective, it avoids the serious inefficiencies, case fragmentation and unfairness that will inevitably result if this putative securities class action proceeds solely against the Defendants who have been served. Because the PSLRA imposes an automatic, mandatory discovery stay each time a motion to dismiss is filed – even when some defendants have already answered – forging ahead will result in unmanageable stop-and-go discovery and Rule 12 motion practice each time Plaintiff serves a new Defendant. Indeed, such an approach will materially prolong the overall litigation timeline because, with nine Defendants trickling into the case, iterative motion practice could result in multiple discovery stays spanning more than a year. And unless parties and witnesses agree to be deposed multiple times, depositions would have to wait until the PSLRA stay is lifted as to the last-served Defendant.

Plaintiff's Opposition tries to frame Brooge's proposal for a temporary stay or briefing schedule modification as "indefinite" and supposedly prejudicial. But such characterizations ignore the disorganization and inefficiency that Plaintiff's proposed approach would introduce into case management and discovery. They also gloss over the fact that the duration of any stay is almost entirely within Plaintiff's control – Plaintiff can expeditiously effect service on the remaining parties and bring them into the litigation, or file dismissals if Plaintiff is not serious about pursuing them. Thus,

---

[1] Defendant Saleh Yammout has agreed to waive service, leaving eight unserved Defendants once Plaintiff files the waiver of service of summons form.

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

far from seeking an "indefinite" halt to the litigation, Brooge seeks a structured pause until Plaintiff completes what it has claimed is "diligently" in progress (ECF 61 at 6), so the parties can then move forward in a single, coordinated and efficient manner.

Nor would a modification to the briefing schedule or narrowly tailored stay unduly prejudice Plaintiff. Vague speculation that a corporate buyout of Brooge might endanger key records is nonsensical. Routine litigation holds protect relevant evidence. And Plaintiff offers no concrete reasons for why a hypothetical acquirer of Brooge would destroy evidence or why a publicly traded company – advised by auditors, bankers and lawyers and already subject to a litigation hold – would neglect to continue preserving corporate records merely because it was being acquired.

In sum, the scheduling fix or modest stay Brooge proposes does not extend or stall the litigation; it shortens it and avoids the unworkable scenario of multiple PSLRA discovery freezes and staggered motion practice triggered by belated service of essential parties. No party would know how far discovery might progress before a new stay is imposed; witnesses might have to sit for multiple depositions months apart, providing duplicative testimony; ESI discovery, document collections, and custodial reviews may need to be reopened, renegotiated and reconducted each time a new Defendant is added; and, every new Defendant will require a new case management order with new discovery cutoffs, dispositive motion deadlines, and trial dates. Any alleged prejudice – all to avoid an endless series of interruptions and complications – is of Plaintiff's own making. Plaintiff has been free – ever since this Court designated it lead plaintiff last July – to accelerate (or continue to neglect) its service obligations as it sees fit. Allowing discovery to begin while most Defendants remain unserved will not result in minor inconveniences, it will drag this case out far beyond the duration of a finite stay tied to completion of service.

For all these reasons, as set forth in its moving and papers and below, Brooge respectfully requests that this Court adopt a revised briefing schedule or impose a short, finite stay so that this litigation can proceed with every party involved, ensuring

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

a cohesive, uniform resolution of Rule 12 motions and an orderly, efficient approach to discovery.

## ARGUMENT

### A.   The Court Should Modify The Briefing Schedule

Plaintiff's opposition fails to address the relevant legal standards pursuant to which it seeks a coordinated briefing schedule involving all Defendants. Brooge does *not* seek to avoid the current briefing deadlines – in fact, it obviously satisfied them when it timely filed its motion to dismiss on February 6. Brooge's request is not about avoiding a missed deadline, it is about ensuring the efficient resolution of Rule 12 motion practice and discovery in light of the continued absence of numerous Defendants and the PSLRA' s automatic discovery stay. Brooge's request for a modified, coordinated briefing schedule is firmly grounded in the Court's inherent power to manage its docket. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). That power is reinforced and complemented by, not limited to, Rule 16.

> *1.    While Brooge Was Clearly Diligent In Meeting The Court's Scheduling Order, The "Good Cause" Standard Also Encompasses Broader Case Management Considerations*

Plaintiff argues that Brooge has not satisfied Rule 16(b)'s "good cause" requirement because Brooge has not shown that, despite acting diligently, it cannot comply with the scheduling order. ECF 61 at 12-13. In effect, Plaintiff argues that Rule 16(b) modifications apply only to missed-deadline scenarios. Plaintiff is wrong.

True, many Rule 16(b) cases involve a party who has missed or is about to miss a deadline and, in such scenarios, the "good cause" standard focuses on whether the party acted diligently in attempting to meet that deadline. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). But Rule 16 does not say that modifications are ***only*** possible if a party cannot comply with a scheduling order. The Rule says that a schedule may be modified "only for good cause and with the judge's

Case No. 2:24-cv-00959-AH-DFM

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

consent." Fed. R. Civ. P. 16(b)(4). That language underscores that Rule 16 – complemented by this Court's broad, inherent discretion to manage its docket – applies broadly to any request based on "good cause" to modify scheduling orders. Thus, "an overall evaluation of 'the rights of the parties, the ends of justice, and judicial economy'" are all considerations – and bases – for modifying scheduling orders, not simply relieving parties of deadlines. *See United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007).

Scheduling orders "are at the heart of case management, and are intended to alleviate case management problems." *Indian Harbor Ins. Co. v. Grp. SHS LLC*, 2021 WL 4557471, at *1 (C.D. Cal. Apr. 30, 2021). Because "good-faith compliance with [ ] Rule 16 plays an important role in this process, not only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (internal citation omitted). Here there can be no serious dispute that Brooge has diligently adhered to the Court's scheduling order – it timely filed its motion to dismiss on February 6, 2025. But "good cause" in the context of Rule 16 is not a narrow concept and courts in the Ninth Circuit recognize that it may encompass broader case-management considerations beyond a simple inability to meet a deadline.

The essence of the "good cause" inquiry is "the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (9th Cir. 1992) (citation omitted). "What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." *Rang Dong Joint Stock Co. v. J.F. Hillebrand USA, Inc.*, 2020 WL 3841185, at *3 (E.D. Cal. July 8, 2020) (quoting 6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2019)). Indeed, pragmatism guides the application of the "good cause" standard: "In considering the consequences of granting a Rule 16(b)(4) motion, the Ninth Circuit has noted that district courts 'should generally allow amendments of

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

pre-trial orders when no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court will be slight.'" *Ronduen v. The GEO Grp., Inc.*, 2024 WL 4800670, at *2 (C.D. Cal. Aug. 26, 2024) (citation omitted).

Thus, while the "good cause" requirement ensures that parties take seriously court-ordered schedules – which Brooge clearly did by timely filing its motion to dismiss – considerations of judicial and party economy, sensible and prudent case management, and fairness to the litigants all inform the good cause analysis. *See, e.g., C.F. ex rel. Farman v. Capistrano Unified Sch. Dist*, 654 F.3d 975, 984 (9th Cir. 2011) (district court did not abuse its discretion in amending scheduling order because it "created no meaningful case management issues" and did not "infringe[ ] on the efficient adjudication" of the litigation); *Ronduen*, 2024 WL 4800670, at *2 ("if the court determines that refusing a modification might result in injustice while allowance would cause no substantial injury to the opponent and no more than slight inconvenience to the court, a modification should ordinarily be allowed"); *Certified Nutraceuticals, Inc. v. Clorox Co.*, 2020 WL 6081718, at *1 (S.D. Cal. Oct. 15, 2020) (citing *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (on motion to amend scheduling order noting that "[i]t is an appropriate exercise of this Court's discretion to grant a stay or continuance 'when it serves the interests of judicial economy and efficiency'")); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007) (noting district court's authority to control its docket for "economy of time and effort for itself, for counsel, and for litigants").

In tandem with Rule 16(b), the district court "possesses the inherent power to control its own docket and calendar." *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983); *Ten Bridges LLC v. Hofstad*, 2023 WL 7281331, at *2 (W.D. Wash. Nov. 3, 2023) (observing that in addition to rule 16(b), district courts "have the inherent authority to manage their dockets and courtrooms"). Based on these complementary powers – which allow courts to hold parties to strict

timetables while still permitting flexibility for good cause – courts have modified schedules to avoid duplicative litigation or wasteful briefing. For example, in *Maverick Gaming LLC v. United States*, 2022 WL 3586995 (W.D. Wash. Aug. 22, 2022), the district court suspended summary judgment deadlines until it could rule on the Shoalwater Bay Tribe's motion for limited intervention and motion to dismiss. *Id.* at *2. The Tribe argued it was an indispensable party that could not be joined because of sovereign immunity, and therefore, the case should be dismissed. There were no issues of missed deadlines or diligence at play; instead the court stayed the briefing schedule to "avoid[] engaging in piecemeal consideration of these issues." *Id.* at *3.

Here, too, the Court should exercise its broad discretion in tandem with Rule 16(b) to conserve scarce judicial and party resources, and ensure that dispositive Rule 12 motions are heard together and discovery (if any) proceeds cohesively on the same timetable for all parties.

> 2.    *Considerations Of Judicial Economy, Sensible Case Management, And Fairness To The Parties All Weigh Heavily In Favor Of Modification*

While fixating on the "diligence" standard relevant to missed-deadline scenarios, Plaintiff pays short shrift to the relevant considerations here – such as whether modifying the briefing schedule would further judicial economy, pragmatic case management, and fairness. Rather than explain how the parties and Court would be better served by proceeding with dispositive motion practice for just two of eleven Defendants, Plaintiff surmises that staggered briefing "can even promote" efficiency (ECF 61 at 14) and the Court might lift the PSLRA discovery stay if a newly served Defendant moves to dismiss.

Both arguments miss the mark. Plaintiff's suppositions about the purported efficiencies of staggered briefing ignore the PSLRA's mandatory stay requirements, the overlapping factual and legal issues that will arise when additional Defendants file their own Rule 12 motions, and the risk of unnecessarily duplicative proceedings if briefing is not coordinated. The sole authority Plaintiff cites in support of staggered

briefing, *Stand Up for Cal. v. U.S. Dep't of Interior*, 2017 WL 10620368, at *1-2 (E.D. Cal. Mar. 8, 2017), involved a very different context – staggered summary judgment cross-motions filed within a few months of one another. There, the court found staggered briefing would result in more responsive counter-arguments versus "a blind, simultaneous system of cross-motions." *Id.* at *2. That rationale has no bearing here, where there are no cross motions, most Defendants remain unserved, and the PSLRA stay will force this litigation to start and stop in repeated cycles each time a new Defendant is properly served, no matter how far along the other parties are.

In addition to fostering precisely the sort of inefficient and costly litigation the PSLRA was designed to curb, serial waves of motion practice would give the Plaintiff a considerable tactical advantage in refining its legal arguments. By the time later-served Defendants file their motions – nine Defendants remain to be served – Plaintiff will have received multiple "bites at the apple" and the ability to continually refine, tailor and shift its opposition arguments.

Equally unavailing is Plaintiff's unfounded optimism that this Court can simply lift the PSLRA discovery stay. This argument understates both the high bar required to lift the stay and the inefficiency of repeated motion practice over the merits and scope of a partial lifting of the PSLRA stay. The PSLRA provides that "all discovery . . . *shall* be stayed during the pendency of any motion to dismiss" in a private securities litigation action. 15 U.S.C. § 78u–4(b)(3)(B) (emphasis added). This is not a discretionary pause; it is mandatory each time a new defendant moves to dismiss. *Sedona Corp. v. Ladenburg Thalmann*, 2005 WL 2647945, at *3 (S.D.N.Y. Oct. 14, 2005) (collecting cases). As the Ninth Circuit has explained, the PSLRA stay will only be lifted under "exceptional circumstances." *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*, 189 F.3d 909, 911-12 (9th Cir. 1999).

Plaintiff's opposition offers no "exceptional circumstances." Courts occasionally lift the PSLRA stay *in part*, but ordinarily only in specialized

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

circumstances – such as where plaintiffs present specific, non-speculative proof of imminent spoliation or the defendant has already produced the same documents to government investigators. *See In re CFS-Related Secs. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001) ("wholly speculative assertions as to the risk of losing evidence are not sufficient" to lift the PSLRA's discovery stay); *In re Fluor Corp. Secs. Litig.*, 1999 WL 817206, at *3 (C.D. Cal. Jan. 15, 1999) (same); *In re Firstenergy Corp. Secs. Litig.*, 229 F.R.D. 541, 544 (N.D. Ohio 2004) (plaintiffs made no showing of "exceptional circumstances" beyond "generalizations of fading memories and allegations of possible loss or destruction). Yet Plaintiff offers nothing more than "wholly speculative assertions" about the effects of a potential sale of Brooge. *See* ECF 61 at 15-16.[2] Absent a concrete, logical explanation, Plaintiff cannot meet its burden under the PSLRA. *See, e.g., New York State Teacher's Ret. Sys. v. Fremont Gen. Corp.*, 2009 WL 10675265, at *3 (C.D. Cal. Nov. 5, 2009) ("[W]ithout some evidence that the third party has threatened to or intends to destroy the documents . . . plaintiff has failed to demonstrate a need to preserve evidence.").

### 3. *Plaintiff's Limited Service Efforts Do Not Alter The Analysis*

Plaintiff's recitation of its limited, belated efforts to serve additional Defendants does not justify forcing the Court and Brooge to litigate this case in

---

[2] None of the cases cited by Plaintiff remotely suggest a full-scale lifting of the PSLRA stay is the norm, or even a viable option. In *WorldCom, Inc. Sec. Litig.*, the court issued a partial lifting of the stay after finding that plaintiffs would be prejudiced by being the only interested party without access to the requested documents, which were already produced to some parties. 234 F. Supp. 2d 301, 305–06 (S.D.N.Y. 2002). In *In re Baan Co. Secs. Litig.*, the court limited discovery to the narrow issue of jurisdiction. 81 F. Supp. 2d 75, 82–83 (D.D.C. 2000). In *Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.*, the court imposed sanctions for spoliation where defendants relinquished control of evidence to a third party, who lost or destroyed it – a concrete result that has not yet (or is even likely to) occurred here. 2008 WL 1995305, at *6 (W.D. Pa. May 6, 2008). And in *In re NTL, Inc. Secs. Litig.*, the court imposed spoliation sanctions for evidence that had already been lost, not empty speculation that it might happen. 244 F.R.D. 179, 200–01 (S.D.N.Y. 2007).

piecemeal waves. Plaintiff's narrative boils down to a list of sporadic, informal measures – "contact[ing] a group offering services relating to foreign service of process," authorizing a contractor to attempt service on Cannon and Richardson, preliminary discussions with a law firm in the U.A.E., and discovering that skip tracing is complicated (ECF 61 at 10-11) – without documenting any meaningful progress since being designated lead plaintiff last July. If Plaintiff truly encountered difficulties in effecting service, it could have raised these issues with the Court and sought additional relief months ago. Notably, Plaintiff did not request summons for the auditor Defendants until just two days ago (ECF 59, 60), and while Plaintiff attempts to shift blame to Brooge, Plaintiff does not contend it sought addresses from Brooge for former employees until January 2025, does not contend it offered to enter into a protective order governing such information, and does not contend it confirmed that relevant privacy laws in the U.A.E. and elsewhere even permit Brooge to hand over the personal information of former employees.

Plaintiff's attempt to blame Brooge also overlooks the fundamental point that the burden to effect service lies with Plaintiff, not Brooge, especially when the named individuals are not current employees and not presently represented by Brooge's counsel.[3] Nor does Plaintiff cite any authority obligating Brooge to provide addresses for former officers or to do Plaintiff's investigative legwork, especially where these individuals are not under Brooge's control, foreign privacy laws might limit or completely prevent Brooge from providing such information, and there is no protective order in place to protect these individuals' personal information.

**B.    In the Alternative, The Court Should Stay The Case**

As Brooge demonstrated in its moving papers, a tailored, finite stay would be more effective and equitable than partial litigation with just two or three of the eleven Defendants. Plaintiff's arguments to the contrary are unconvincing.

---

[3] As noted above, Saleh Yammout has agreed to waive service.

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

First, Plaintiff argues that it would be damaged by a stay, citing *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718 (9th Cir. 2007) for the proposition that "indefinite" stays "create a danger of denying justice by delay." ECF 61 at 17.[4] But Brooge does not request an "indefinite" stay – it merely proposes a narrowly tailored stay that places its duration squarely in Plaintiff's hands and subject to an outer reasonable limit – the stay lifts upon Plaintiff completing service on the remaining Defendants or upon a reasonable cutoff date set by the Court. Plaintiff can then either expedite its service efforts so that a stay lasts only as long as it takes Plaintiff to do what it already claims it is diligently trying to accomplish, or dismiss those Defendants it cannot or will not serve. Indeed, Plaintiff, the currently served Defendants and the Court would all benefit from a more efficient resolution of Rule 12 motions and a single, cohesive discovery schedule.

The only other supposed prejudice to which Plaintiff points is vague speculation about evidence being lost if Brooge is sold. That assertion is nonsensical; a business transaction does not automatically threaten destruction of evidence and acquisitions of publicly traded corporations being advised by auditors, bankers and lawyers typically involve the diligent preservation of business records, not their destruction – especially in the midst of active litigation. If Plaintiff has concrete reasons to believe records are at imminent risk or that Brooge's hypothetical acquirer would destroy evidence – and Plaintiff has offered none – it can request targeted relief.

Plaintiff next argues that no hardship will befall Brooge and that Brooge is merely trying to avoid defending this case. As a threshold matter, Brooge need not

---

[4] Plaintiff's remaining cases do not establish prejudice. In both *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005) ("weighing plaintiff's interest in proceeding against the prejudice it would suffer if the action is stayed"); and *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 WL 674691, at *5 (E.D.N.Y. Feb. 28, 2007) (similar); the court applied a different factor than the one used here and made no finding as to the amount of prejudice a plaintiff might face should an action be stayed to allow plaintiff to serve a number of defendants.

demonstrate hardship because Plaintiff has not and cannot identify any cognizable damage it would suffer from a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (only when there is a "fair possibility that the stay … will work damage to someone else," must the party seeking the stay "make out a clear case of hardship or inequity"). In any event, Brooge faces genuine and concrete burdens if forced to proceed in a fragmented posture while most co-Defendants remain unserved. These burdens include not only the inefficiencies and undue prejudice inherent in having to litigate this action in piecemeal fashion and the inability to conduct first-party discovery of the Auditor Defendants,[5] but the potential for Plaintiff to misuse discovery to improperly bolster its pleadings and refine its legal theories. *See In re WorldCom, Inc. Secs. Litig.*, 234 F. Supp. 2d at 305.

Plaintiff further argues that Brooge, in referencing the hardship from piecemeal, stop-start litigation, is merely "complain[ing] about the consequences of [its] own actions." ECF 61 at 18 (citing *Tesoro Ref. & Mktg. Co. v. Pac. Gas & Elec. Co.*, 2015 WL 5675861, at *15 (N.D. Cal. Sept. 28, 2015)). Elkin's Reply in Support of the Motion to Stay (ECF 68) and the accompanying copies of the parties meet-and-confer correspondence (ECF 68-1) show the opposite. Defendants attempted to insert language into the stipulated schedule that "it would be more efficient to set a full briefing schedule after all defendants have appeared or at least been served." ECF 68-1 at 6. Thus, far from suddenly developing "buyers' remorse" (ECF 61 at 13), Brooge from the outset tried to address what was plainly a looming issue – that most Defendants remain unserved. Months later, Plaintiff has still failed to rectify that core

---

[5] Plaintiff's argument that securities claims against auditors differ from those against companies and individuals misses the point. ECF 61 at 20 (citing *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000); *In re Health Mgmt., Inc. Secs. Litig.*, 970 F. Supp. 192, 203 (E.D.N.Y. 1997)). Brooge is not arguing that these claims are the same; it merely notes – and Plaintiff does not deny – that discovery from these parties will be crucial in defending the securities claim brought against it.

11                                          Case No. 2:24-cv-00959-AH-DFM
REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

problem and Plaintiff conspicuously neglects to mention that Brooge repeatedly requested to continue the response deadline until after all of the service issues were resolved.  Plaintiff can hardly fault Brooge for now asking the Court to intervene. Indeed, Plaintiff's considered decision ***not*** to cure the problem makes the need for a modest stay or coordinated briefing schedule all the more pressing.

Finally, Plaintiff incorrectly contends that judicial economy would somehow be furthered by the stop-and-go litigation that will inevitably result should this case forge ahead without the remaining Defendants. But the Opposition never explains why pressing forward creates any true efficiency for the Court. Plaintiff makes a passing reference to resolving "jurisdictional issues…as soon as possible" (ECF 61 at 21) but this overlooks the fact that the Fair Fund's payouts are shortly forthcoming and could obviate – or at least drastically curtail – the jurisdictional issues for the Court to decide on Defendants' motions to dismiss.[6]

## CONCLUSION

For the foregoing reasons, Brooge respectfully requests that the Court set a single hearing on all motions to dismiss, for all served Defendants, for sixty (60) days after the date on which Plaintiff has completed service; or, if Plaintiff has not served any further Defendants by August 1, 2025, set a hearing for August 27, 2025 at 1:30 p.m., with all further briefing deadlines on the motion(s) to dismiss based on the new hearing date.

---

[6] With respect to the *Anvil Trust* litigation, Plaintiff mischaracterizes Brooge's position as advocating that the Plaintiff "should sit idly" and defer its case in favor of that case. ECF 61 at 21. That is not what Brooge proposes. Brooge points to *Anvil Trust* because two of the plaintiffs in that action are among the Defendants in this case. Their prosecution of the *Anvil Trust* litigation highlights the possibility of conflicting rulings, particularly if they are never served here and do not participate in this action. Plaintiff should complete service upon them so they can appear, defend and be subject to first-party discovery, or dismiss them if Plaintiff does not seriously intend to pursue them. In the meantime, the proposed stay, as an added benefit, reduces the risk of inconsistent rulings.

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

Dated: March 12, 2025

Respectfully submitted,

By: ___/s/ Perrie M. Weiner_____

Perrie M. Weiner
**BAKER & MCKENZIE LLP**

Stacey H. Wang
**HOLLAND AND KNIGHT LLP**

Attorneys for Defendant
BROOGE ENERGY LIMITED

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Brooge Energy Limited, certifies that this Reply Brief is 12 pages in length and complies with the 12-page limit of this Court's Standing Order, ¶ F(3), dated December 17, 2024, docketed in this action as ECF 48 at 8.

Dated: March 12, 2025

_____
Benjamin W. Turner

Case No. 2:24-cv-00959-AH-DFM

REPLY IN SUPPORT OF MOTION TO MODIFY MOTION AND HEARING SCHEDULE OR STAY