Josh A. Rubin
AKIN GUMP STRAUSS HAUER & FELD
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone: (310) 728-3282
rubinj@akingump.com

*Attorneys for Defendant
PricewaterhouseCoopers Limited
Partnership, Dubai Branch*

*[Additional Counsel on Next Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHITE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BROOGE ENERGY LIMITED F/K/A BROOGE HOLDINGS LIMITED F/K/A TWELVE SEAS INVESTMENT COMPANY, NICOLAAS L. PAARDENKOOPER, SALEH YAMMOUT, SYED MASOOD ALI, LINA SAHEB, DIMITRI ELKIN, NEIL RICHARDSON, STEPHEN N. CANNON, PAUL DITCHBURN, ERNST & YOUNG, and PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH, <br><br> Defendants. | Case No.: 2:24-cv-00959-AH-DFM <br><br> **DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** <br><br> Date: February 4, 2026 <br> Time: 1:30 p.m. <br> Courtroom: 9C <br> Judge: Hon. Anne Hwang |

## ADDITIONAL COUNSEL FOR DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH

**SIDLEY AUSTIN LLP**
Bruce Braun (admitted *pro hac vice*)
bbraun@sidley.com
Karim Basaria (admitted *pro hac vice*)
kbasaria@sidley.com
Rebecca B. Shafer (admitted *pro hac vice*)
rshafer@sidley.com
One South Dearborn
Chicago, Illinois 60603

**AKIN GUMP STRUSS HAUER & FELD LLP**
M. Scott Barnard (admitted *pro hac vice*)
sbarnard@akingump.com
Jessica J. Mannon (admitted *pro hac vice*)
jmannon@akingump.com
2300 N. Field St., Suite 1800
Dallas, TX 75201
Telephone:  214.969.2800
Facsimile:  214.969.4343

Claudius B. Modesti (admitted *pro hac vice*)
cmodesti@akingump.com
Robert S. Strauss Tower, 2001 K St NW, Washington, DC 20006
Telephone: 202.887.4000

# TABLE OF CONTENTS

Page

I.    Plaintiff Fails to Allege a False Statement Opinion Under *Omnicare*. ................1

    A.    PwC's Statements Are Opinions Subject to *Omnicare*. ...........................1

    B.    Plaintiff Fails to Allege a False Statement of Opinion. ............................2

        1.    PwC's Statements Are Opinions, Not "Embedded Facts." .............2

        2.    Bluefin's Opposition Fails to Identify Facts Alleging That PwC Did Not Honestly Believe Its Opinions When It Issued Them. .......................................................................................3

        3.    Bluefin's Opposition Fails to Identify Facts Supporting a Claim Under an Omission Theory of Liability ...............................3

II.   Plaintiff Fails to Allege a Strong Inference of Scienter. ....................................5

    A.    Plaintiff Does Not Assert That PwC Had Actual Knowledge of a Fraud .........................................................................................5

    B.    Plaintiff Fails to Plead Deliberate Recklessness Through Motive. ...........5

    C.    Plaintiff Fails to Plead Deliberate Recklessness Via "Red Flags." ...........6

III.  Plaintiff Has Failed to Allege Loss Causation. ................................................11

IV.   PwC Appropriately Adopted Certain of EY's Arguments. ...............................12

Conclusion ...............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................................9

*In re Am. Bus. Fin. Servs., Inc. Noteholders Litig.*,
2008 WL 3405580 (E.D. Pa. Aug. 11, 2008) ........................................................9

*In re Am. Realty Cap. Props., Inc.*,
2016 WL 11110435 (S.D.N.Y. Aug. 5, 2016) .......................................................4

*In re AOL Time Warner, Inc. Sec. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007) ...........................................................11, 12

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ........................................................8

*In re Cendant Corp. Litig.*,
60 F. Supp. 2d 354 (D.N.J. 1999) .......................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ................................................................................3

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................................5

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) ............................................................................11

*Hunt v. Bloom Energy Corp.*,
2021 WL 4461171 (N.D. Cal. Sept. 29, 2021), *aff'd sub nom. Hunt*,
159 F.4th 609 (9th Cir. 2025) ............................................................................1, 2

*Hunt v. PricewaterhouseCoopers LLP*,
159 F.4th 603 (9th Cir. 2025) ............................................................................1, 2

*Intire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013) ..................................................................2

*Johnson v. CBD Energy Ltd.*,
  2016 WL 3654657 (S.D. Tex. July 6, 2016) ...................................................1, 2

*In re Lernout & Hauspie Sec. Litig.*,
  230 F. Supp. 2d 152 (D. Mass. 2002)..................................................................5

*Mehedi v. View, Inc.*,
  2023 WL 3592098 (N.D. Cal. May 22, 2023) ...................................................1, 2

*Meniooh v. Gagnon*,
  2022 WL 4129305 (N.D. Cal. Sept. 12, 2022), *aff'd*, 2023 WL
  5352002 (9th Cir. Aug. 21, 2023) ......................................................................12

*Munoz v. China Expert Technology, Inc.*,
  2011 WL 13258218 (S.D.N.Y. Nov. 7, 2011) ......................................................8

*Munoz v. China Expert Technology, Inc.*,
  2011 WL 5346323 (S.D.N.Y. Nov. 4, 2011) ........................................................8

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  184 F. Supp. 3d 861 (D. Or. 2016)....................................................................12

*In re New Century*,
  588 F. Supp. 2d 1206 (C.D. Cal. 2008)...............................................................5

*New Mexico State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ..............................................................5, 6, 8, 9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
  730 F.3d 1111 (9th Cir. 2013) ...........................................................................12

*In re Nuvelo, Inc. Sec. Litig.*,
  668 F. Supp. 2d 1217 (N.D. Cal. 2009)................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)......................................................................................1, 3, 4

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .............................................................................12

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
  799 F. Supp. 3d 310 (S.D.N.Y. 2025) ..................................................................2

*In re OSG Sec. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013) ....................................................................1

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   51 F. Supp. 2d 290 (S.D.N.Y. 1999) .....................................................................6

*In re: Petrobras Sec. Litig.*,
   2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016) ........................................................1

*In re Philip Servs. Corp. Sec. Litig.*,
   383 F. Supp. 2d 463 (S.D.N.Y. 2004) ................................................................5, 8

*Plaisance v. Schiller*,
   2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) .......................................................4

*Reiger v. Altris Software, Inc.*,
   1999 WL 540893 (S.D. Cal. Apr. 30, 1999) ..........................................................8

*In re Rent-a-Way Sec. Litig.*,
   209 F. Supp. 2d 493 (W.D. Pa. 2002) .................................................................10

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   380 F. Supp. 2d 509 (D.N.J. 2005).........................................................................5

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   2022 WL 3572474 (M.D. Pa. Aug. 18, 2022).....................................................4, 9

*Se. Penn. Trans. Auth. v. Orrstown Fin. Servs., Inc.*,
   2016 WL 7117455 (M.D. Pa. Dec. 7, 2016) ..........................................................4

*In re Silver Wheaton Corp. Sec. Litig.*,
   2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) .......................................................2

*Special Situations Fund III QP, L.P v. Deloitte Touche Tohmatsu CPA,
   Ltd.*,
   645 F. App'x 72 (2d Cir. 2016) .........................................................................2, 8

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
   243 F. Supp. 3d 1109 (E.D. Cal. 2017) .................................................................1

*Starr Int'l U.S.A. Invs. v. Ernst & Young, LLP*,
   131 F. Supp. 3d 241 (S.D.N.Y. 2015) ...................................................................3

*In re SunEdison, Inc. Sec. Litig.*,
   300 F. Supp. 3d 444 (S.D.N.Y. 2018) ....................................................................4

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ..............................................................................9

*Swanson v. United States Forest Serv.*,
   87 F.3d 339 (9th Cir. 1996) ..............................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................11

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
   694 F. Supp. 2d 1192 (W.D. Wash. 2009) ...........................................................2

*Whalen v. Hibernia Foods PLC*,
   2005 WL 1799370 (S.D.N.Y. Aug. 1, 2005) .....................................................10

**Statutes**

15 U.S.C. § 7217.......................................................................................................11

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

Relying on overruled case law and mischaracterizing its own allegations, Bluefin's Opposition amplifies the fatal defects in its claim against PwC. Bluefin has not met the high bars for alleging falsity and scienter against an audit firm, nor adequately alleged loss causation. The Court should dismiss the claim with prejudice.

## I. Plaintiff Fails to Allege a False Statement Opinion Under *Omnicare.*

### A. PwC's Statements Are Opinions Subject to *Omnicare.*

Bluefin challenges the foundational premise that statements in independent auditors' reports are opinions (Opp. at 8), contrary to established law. The Ninth Circuit has made clear that the type of auditor statements at issue here are opinions subject to *Omnicare*. *Hunt v. PricewaterhouseCoopers LLP*, 159 F.4th 603, 609, 613–16 (9th Cir. 2025); *accord Mehedi v. View, Inc.* ("*View*"), 2023 WL 3592098, at *10 (N.D. Cal. May 22, 2023) (collecting cases); Mem. at 7.

Bluefin never distinguishes this controlling precedent. Instead, it cites three discredited and non-binding cases that are wholly unpersuasive. Opp. at 8. *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387 (S.D.N.Y. 2013), pre-dates *Omnicare* and applied a standard that *Omnicare* expressly rejected. *Compare id.* at 398–400 (applying objective-falsity standard), *with Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 181 (2015) (reversing application of that standard). The Ninth Circuit has effectively overruled *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.* ("*Marrone*"), 243 F. Supp. 3d 1109 (E.D. Cal. 2017). *See Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *14 (N.D. Cal. Sept. 29, 2021) (disagreeing with *Marrone*), *aff'd sub nom. Hunt*, 159 F.4th 609 (9th Cir. 2025). And the court in *In re: Petrobras Sec. Litig.*, 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016), chose **not** to decide if *Omnicare* governs an auditor's opinions, *id.* at *3, and applied *Omnicare* in a way courts have since expressly refuted. *See Hunt*, 2021 WL 4461171, at *15 (rejecting *Petrobras*' application of *Omnicare*); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *12 (S.D. Tex. July 6, 2016) (same). *Hunt* is clear: an audit opinion is "subject to liability" only pursuant to *Omnicare*—full stop. 159 F.4th at 613.

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

## B. Plaintiff Fails to Allege a False Statement of Opinion.

Bluefin's alternative argument—that it has alleged falsity under each of the three avenues under *Omnicare*—is equally without basis.

### 1.   PwC's Statements Are Opinions, Not "Embedded Facts."

Bluefin asserts that PwC's opinions contain "false embedded statements of fact." Opp. at 9. This is wrong as a matter of law. *See View*, 2023 WL 3592098, at *10 (audit opinions do not contain embedded facts); *Johnson*, 2016 WL 3654657, at *12 (same); *Hunt*, 2021 WL 4461171, at *15 (same); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 799 F. Supp. 3d 310, 359 (S.D.N.Y. 2025) (same); *Special Situations Fund III QP, L.P v. Deloitte Touche Tohmatsu CPA, Ltd.* ("*Deloitte*"), 645 F. App'x 72, 75–76 (2d Cir. 2016) (subjective falsity and omissions are ***only*** ways to challenge audit report). These courts have found that auditors' opinions regarding compliance with standards and the presentation of financial statements do not contain embedded facts because they do not contain "factual bases." *E.g.*, *Johnson*, 2016 WL 3654657, at *12.

Bluefin cites a single post-*Omnicare* decision in support of its argument, *In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269 (C.D. Cal. Mar. 25, 2019). Opp. at 9. But *Silver Wheaton* did not address the embedded-facts prong at all, and it rejected the point for which Bluefin advocates—holding instead that an auditor's statement regarding compliance with PCAOB standards was ***not*** a "statement of fact" but rather an opinion. 2019 WL 1512269, at *12. Bluefin's two other cases pre-date *Omnicare*. *See* Opp. at 9. Neither analyzes whether audit opinions contain embedded facts, and both applied the objective-falsity standard that *Omnicare* rejected. *See In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1224 (W.D. Wash. 2009); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 134 (S.D.N.Y. 2013); *supra* at 1. Conversely, numerous post-*Omnicare* decisions make clear that the statements Bluefin challenges are opinions, not embedded facts. *See View*, 2023 WL 3592098, at *10 (collecting cases rejecting *Washington*).

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

2. Bluefin's Opposition Fails to Identify Facts Alleging That PwC Did Not Honestly Believe Its Opinions When It Issued Them.

Bluefin's Opposition does not point to a single factual allegation indicating that PwC believed its opinions were false. Opp. at 10  (containing no citations to SAC). Instead, Bluefin offers its own conclusion that "PwC was aware of Brooge's practices, ignored numerous red flags, and played a key role in the revenue scheme." *Id.* The factual allegations do not support this bald assertion. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.* ("*Dearborn Heights*"), 856 F.3d 605, 616–18 (9th Cir. 2017) (complaint fails to allege subjective falsity where it "contains no allegations" that defendant "did not believe" its opinions). As PwC has explained, the SEC Order Bluefin incorporates by reference into the SAC confirms that Brooge's management actively deceived PwC. *See* Mem. at 8–9.

Further, Bluefin's sole authority on this point, *Starr Int'l U.S.A. Invs. v. Ernst & Young, LLP*, 131 F. Supp. 3d 241 (S.D.N.Y. 2015), is inapposite. That case concerned whether detailed evidence that the auditor was aware of red flags precluded ***summary judgment***, not whether the plaintiff had adequately alleged subjective falsity in its complaint. *Id.* at 251, 259. The evidence in *Starr* included testimony that management informed the auditor it had improperly "remove[d] temporarily $50 billion from its balance sheet"—information a senior audit partner testified was "nothing new" to her. *Id.* at *256–57. Here, by contrast, there are no allegations that PwC was made aware of Brooge's fraud, and the SEC Order says just the opposite. Bluefin concludes with hindsight that PwC "should have" or must have known, but such allegations are insufficient to allege subjective falsity. *See Dearborn Heights*, 856 F.3d at 617–18.

3. Bluefin's Opposition Fails to Identify Facts Supporting a Claim Under an Omission Theory of Liability.

Bluefin's Opposition does not "identify particular" or "material" facts showing that PwC failed to conduct a meaningful inquiry, or possessed and omitted knowledge that rendered its opinions materially misleading. *See Omnicare*, 575 U.S. at 194.

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

In cases where courts have allowed claims against independent auditors to proceed under the omission theory—including cases Bluefin cites—the plaintiffs alleged particular facts establishing how the auditors' inquiries or knowledge were tied directly to the facts they allegedly omitted. *See, e.g.*, *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.* ("*SEPTA*"), 2022 WL 3572474, at \*53–57 (M.D. Pa. Aug. 18, 2022) (plaintiff made "extensive" allegations about auditor's interactions with management and firsthand knowledge of undisclosed information); *Marrone*, No. 2:14-cv-2571-MCE-KJN (E.D. Cal. Jun. 1, 2016), ECF No. 76 ¶¶ 182–83 (alleging particular facts about how auditor did not send confirmations to distributors and connecting that to fraud); *In re Am. Realty Cap. Props., Inc.*, 2016 WL 11110435, at \*1–2 (S.D.N.Y. Aug. 5, 2016), *and* No. 1:15-mc-00040-AKH (S.D.N.Y. Sept. 30, 2016), ECF 312 ¶ 66 (alleging that chief accounting officer informed auditor of fraud).

Bluefin asserts that PwC had "information about" six "issues." Opp. at 10–12. But it never points to facts connecting these "issues" to "particular (and material)" facts about PwC's procedures. *Omnicare*, 575 U.S. at 194. Instead, Bluefin alleges merely that Brooge's customer relationships "should have provoked extreme skepticism." Opp. at 12; SAC ¶¶ 188–90. But the only particular facts regarding PwC's procedures and knowledge demonstrate PwC's good-faith diligence and bear no connection to any material omission. *See* Mem. at 15–16; SAC ¶¶ 196–208, 220–25, 232–33.

Numerous courts have dismissed such unparticularized allegations against auditors for failure to plead falsity. *E.g., Se. Penn. Trans. Auth. v. Orrstown Fin. Servs., Inc.*, 2016 WL 7117455, at \*23 (M.D. Pa. Dec. 7, 2016) (pleaded only "conclusory assertions" regarding auditor, and SEC order did not refer to auditor); *Plaisance v. Schiller*, 2019 WL 1205628, at \*12–13 (S.D. Tex. Mar. 14, 2019) (did not allege facts that auditor "knew or should have known" issuer "lacked" documentation); *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 499–500 (S.D.N.Y. 2018) (did not allege facts regarding basis of auditor's opinion). This Court here should do the same.

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

## II. **Plaintiff Fails to Allege a Strong Inference of Scienter.**

### A. Plaintiff Does Not Assert That PwC Had Actual Knowledge of a Fraud.

Bluefin's Opposition is devoid of factual allegations that PwC knew about Brooge's fraudulent scheme or revenue improprieties, confirming that Bluefin is trying to plead scienter only through deliberate recklessness. *Cf.* Opp. at 13 (asserting only that PwC knew about Brooge's features and practices). The cases Bluefin relies on, however, are distinguishable because they ***did*** involve particular factual allegations showing that the auditor knew of the issuer's misstatements. *See New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1101 (9th Cir. 2011) (auditor knew "previously reported financials [were] false"); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 567, 570–71 (D.N.J. 2005) (auditors had "actual notice" of overstatements and non-compliance with SEC guidance via two memoranda from issuer's internal auditor); *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 475 (S.D.N.Y. 2004) (auditor knowingly advised management to mischaracterize expenses and knew issuer's method of revenue recognition violated GAAP); *In re New Century*, 588 F. Supp. 2d 1206, 1234–35 (C.D. Cal. 2008) (auditor knew issuer used "faulty method for calculating" certain reserves, and auditor's own valuation specialist "refused to approve the audit"); *In re Lernout & Hauspie Sec. Litig*., 230 F. Supp. 2d 152, 159 (D. Mass. 2002) (auditor advised issuer to backdate contracts to "address" "revenue recognition problems"). Bluefin does not and cannot make any such allegations.

### B. Plaintiff Fails to Plead Deliberate Recklessness Through Motive.

Bluefin's attempt to plead scienter through motive conflicts with the weight of authority holding that allegations about an auditor's economic motivations are insufficient to plead scienter. *See* Mem. at 23 (collecting cases). Bluefin does not attempt to distinguish this authority. Opp. at 21. Nor does Bluefin cite to a single case where a court found that an auditor's alleged motivation to obtain fees or "curry" favor was sufficient. *Id.* Indeed, in the only cases Bluefin cites with regard to motive, the courts held that the plaintiffs ***failed*** to allege scienter against auditors. *See In re*

*Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1198 (C.D. Cal. 2008); *In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 296 (S.D.N.Y. 1999).

### C. Plaintiff Fails to Plead Deliberate Recklessness Via "Red Flags."

Bluefin's red-flags arguments fail on multiple levels. Bluefin repeatedly mischaracterizes the facts—subtly in some instances and flagrantly in others—and then it downplays how difficult it is for a plaintiff to plead "sufficient facts to support a strong inference of scienter by an outside auditor." *See New Mexico*, 641 F.3d at 1097.

*First*, the Opposition twists allegations to try to implicate PwC without any plausible basis in the SAC. For example, Bluefin quotes an email from Brooge's then-CEO about how an erroneous transfer did not make "sense" and showed a "lack of control," but omits that PwC is not alleged to have ever received the email. Opp. at 4–5; SAC ¶ 201. Bluefin then suggests, without citation, that PwC relied "solely on management" and did not "check" the fake invoices, contact customers, or make site visits. Opp. at 16. But the SAC pleads no such *facts*, nor does it explain how doing so would have revealed the fraud. And the SEC Order on which Bluefin relies makes clear that PwC *did* perform testing, and that Brooge hid the fraud from PwC through a "complicated scheme" that included "fabricat[ed] emails, customer order forms, charts, and confirmation letters." *See* Mem. at 5 (citing SEC Order). Bluefin simply invents the assertion in its Opposition about PwC's inquiry out of whole cloth.

Bluefin also mischaracterizes events from EY's tenure to suggest there were red flags at the outset of PwC's audit. It first claims EY "flagged suspicious transactions with BIA." Opp. at 18. But the SAC says no such thing. The cited paragraphs simply reflect that EY identified "various agreements" it "opined" were "in place for the appropriate reasons," and that there were delays in the company's readiness for EY's audit. *See* SAC ¶¶ 194, 230. Bluefin then asserts, without citation, that EY resigned over a material weakness and concerns about Brooge's personnel. Opp. at 17. This, too, is not alleged. The only allegation about EY's resignation concerns the disclosure that

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

"there were no disagreements with [EY], on any matter of accounting, principles or practice, financial statement disclosure, or auditing scope or procedures …" SAC ¶ 60.

Bluefin's rendition of PwC's tenure follows a similar pattern. Bluefin claims that Brooge's second restatement "happened under PwC's watch." Opp. at 17. But this subtly evades the pertinent fact: the second restatement (made to correct accounting unrelated to fraud) was of Brooge's FY2019 financial statements, which EY—*not PwC*—audited, and merely occurred after PwC was engaged. *See* SAC ¶¶ 30, 238. Bluefin also describes PwC's resignation letter in a way that misleadingly suggests it concerned "disagreements" during PwC's FY2020 audit. Opp. at 6. This contradicts the alleged facts. Brooge filed the letter in January 2023, nearly *two years* after PwC issued the Audit Report in April 2021 *and* after the Audit Committee's four-month forensic investigation "in response to" the SEC's investigation. SAC ¶¶ 61–62, 64, 129.

Taken together, these distortions—selective quotation, omission of dispositive facts, and outright invention—underscore that the Opposition's red-flags narrative rests not on the allegations in the SAC or governing law, but on liberties with the record that fatally undermine the story Bluefin tries to tell in its Opposition.

Turning to the SAC itself, the limited instances where Bluefin discusses particular facts regarding PwC's procedures contradict any inference of scienter. *See* SAC ¶¶ 196–208, 220–25, 232–33; Mem. at 15–16. PwC "flagged the issue of BIA from the outset," consistent with auditors' obligations in planning an audit. SAC ¶ 196. PwC then addressed the erroneous transfer—even though it had been rectified months before PwC's audit—by making inquiries to management and raising it with Brooge's audit committee. *Id.* ¶¶ 199, 201, 203. Bluefin conspicuously has nothing to say about the SAC's failure to allege that the transfer was fraudulent or related to the fraud.

Bluefin's remaining red-flags arguments largely describe facts from Brooge's own disclosures or the SEC Order, label those facts "red flags," and tack on conclusory allegations that PwC "should have" uncovered them sooner. Opp. at 13–21. This is a "classic" example of impermissible "fraud-by-hindsight" pleading, where a plaintiff

7

draws on "later disclosed information" to identify "red flags" from facts that did not signify fraud at the time. *See Reiger v. Altris Software, Inc.*, 1999 WL 540893, at *7–8 (S.D. Cal. Apr. 30, 1999); *Deloitte*, 645 F. App'x at 75. Such pleading does not support scienter. *Reiger*, 1999 WL 540893, at *8. And contrary to Bluefin's assertion, "fraud by hindsight" does not arise only where "red flags appeared ***after*** the truth was revealed." Opp. at 11. It also arises where, as here, facts were known but "were not obvious signs of fraud" at the time. *Deloitte*, 645 F. App'x at 75. The key issue is whether the alleged "red flags" can be "characterized" as false or "obvious signs of fraud" "only with the benefit of hindsight." *Id.* The cases Bluefin cites do not suggest otherwise. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020) (no fraud by hindsight because defendants "***were*** aware" that facts were "imminently … illegal"); *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1230 (N.D. Cal. 2009) (discussing predictions proven "wrong in hindsight," not pleading by hindsight).

***Second***, Bluefin repeatedly twists case law. For example, Bluefin states the court in *Philip* found that "massive increases" in inventory were "clear evidence" of fraud, but omits that the auditor advised management to mischaracterize expenses. 383 F. Supp. 2d at 471–72; Opp. at 16. Bluefin also describes *Munoz v. China Expert Technology, Inc.*, 2011 WL 5346323 (S.D.N.Y. Nov. 4, 2011), as upholding claims against an auditor that "did not check [] customer contracts." Opp. at 16. But it cites to a discovery order, and the only motion to dismiss order on Westlaw has nothing to do with scienter. *Munoz v. China Expert Technology, Inc.*, 2011 WL 13258218, at *1 (S.D.N.Y. Nov. 7, 2011). Bluefin also misconstrues *New Mexico* as suggesting an auditor's "failure to obtain verifying documents" is enough to plead scienter. Opp. at 14. The Ninth Circuit made no such categorical rule and instead found the plaintiff alleged scienter because it cited emails reflecting that the auditor requested documentation related to an option grant, "never received or reviewed ***any*** documents, real or fraudulent" related to the grant, and "still signed off." 641 F.3d at 1098–99.

If anything, Bluefin's cases highlight the stark difference between the SAC—which is bereft of particular facts supporting scienter and instead backs into the conclusion that the auditors "should have" done more—and cases in which plaintiffs alleged sufficient particular facts to meet the high bar for pleading fraud against an auditor. In *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) (Opp. at 13, 19), the plaintiff pointed to ***30*** red flags, including that the company restricted the auditor's access to key accounting personnel and provided records to the auditor demonstrating it received customer payments from the same accounts to which it paid suppliers' invoices. 438 F.3d at 279. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111 (S.D.N.Y. 2021), involved 13 red flags—not merely related-party relationships (which the court agreed were ***not*** "tantamount to red flags of fraud"), but rather multiple unusual related party arrangements, a CEO with a criminal background and history of legal issues, the company's repurchase of the CEO's shares at inflated prices, and rapidly rising receivables. *In re Am. Bus. Fin. Servs., Inc. Noteholders Litig.* involved nearly a dozen red flags, including that the predecessor auditor resigned mid-audit and identified "four potentially large unresolved audit issues," which the auditor memorialized internally and then ignored—all in the face of government inquiries by the SEC, state regulators, and the U.S. Department of Justice. 2008 WL 3405580, *3–4 (E.D. Pa. Aug. 11, 2008). In *SEPTA*, the plaintiff made "detailed allegations" regarding the auditor's knowledge, including with regard to recommendations from the auditor concerning inadequate disclosures that the issuer "ignored" and an officer's admission that the company did not comply with its own policies. 2022 WL 3572474 at *73–75.

By contrast, Bluefin's limited particularized allegations regarding PwC (SAC ¶¶ 196–208, 220–25, 232–33) and its sensationalized characterization of PwC's inquiries do not come close to alleging such egregious conduct. *See* Mem. at 14–21.

Bluefin's older cases—which predate *Tellabs* and the more recent authority cementing the high bar for pleading fraud by an auditor, *see New Mexico*, 641 F.3d at 1097—are inapposite. Each included ***particular*** factual allegations of ***egregious***

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

*misconduct* by the auditor. In *Whalen v. Hibernia Foods PLC* (Opp. at 14), the plaintiff alleged that the company's former finance manager ***directly informed*** the auditor that a managing director "was paying suppliers out of his personal bank account" due to the "severe" "cash situation," and the company fell behind on payments to the auditor itself. 2005 WL 1799370, at \*3–4 (S.D.N.Y. Aug. 1, 2005). In *In re Rent-a-Way Sec. Litig.* (Opp. at 19 n.16), the company's ledger was so inadequate that it prevented the auditor from cross-checking the company's calculations; the auditor "knew and approved of" manual adjustments "to make the … numbers balance"; and the auditor removed its own staff from the audit after she expressed concerns about the accounting. 209 F. Supp. 2d 493, 500–01 (W.D. Pa. 2002). *In re Cendant Corp. Litig.* (Opp. at 16, 19) involved an auditor who "relied largely on management's representations" and never obtained direct evidence, post-closing journal entries, or a relevant general ledger. *Compare* 60 F. Supp. 2d 354, 373 (D.N.J. 1999) *with* Ex. 1 to Mem. ¶ 24 (discussing PwC's invoice testing).

    ***Third***, Bluefin does not address at all the conclusions in the SEC Order that the auditors were victims of Brooge's scheme or the compelling inference that Order raises. Bluefin does not suggest the Court should disregard the SEC Order, which it cites 35 times in the SAC and which details how Brooge's management "misled the auditors" and kept them in the dark about the fraud. Ex. 1 to Mem. ¶¶ 4, 24; Mem. at 5 n.5.

    Bluefin instead baldly claims that the SEC's conclusions "prove[] nothing" and "do not exonerate PwC" because the SEC "was not tasked with evaluating" PwC's work. Opp. at 10, 20. This is plain wrong. First, it defies logic that the SEC would find that PwC was misled by Brooge without assessing PwC's audit work. Indeed, the SEC Division of Enforcement's mandate includes evaluating the conduct of independent auditors, and the SEC routinely brings charge against auditors for failures to exercise due care and professional skepticism.[1] Here the SEC Order reflects the ***opposite***

---

[1] *See* SEC Division of Enforcement, Enforcement Manual, https://www.sec.gov/divisions/enforce/enforcementmanual.pdf (last visited Jan. 13, 2026), at 88 (the SEC has "jurisdiction over auditors"); Amendment to Rule 102(e) of the Commission's

10

conclusion—that the auditors performed testing procedures and were misled by a complex scheme orchestrated by Brooge's management that included fake invoices, contracts, ledger entries, and other documents. *See* Mem. at 5.

Bluefin's argument that the SEC's conclusions "do not exonerate PwC" misses the point. The SEC Order, together with the absence of particular facts in the SAC demonstrating that PwC acted with scienter, mean that the inference that PwC lacked scienter is far more "compelling" than any inference Bluefin has tried to conjure. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

## III.   Plaintiff Has Failed to Allege Loss Causation.

The Opposition confirms that Bluefin relies on three "corrective" disclosures that did not reveal to the market any falsity in *PwC's* statements. Opp. at 23–24. This is fatal. Bluefin's cases confirm a plaintiff must plead facts showing a corrective disclosure revealed "the falsity of the *defendant's* misstatement." *E.g.*, *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1204, 1206 (9th Cir. 2020); *see also* Mem. at 23–24. Bluefin never ties its "corrective" disclosures to statements in PwC's Audit Report.

Bluefin contends it has "cited reasons" corrective disclosures "need not explicitly correct" a defendant's prior representation. Opp. at 22 n.20. But the Opposition does not cite any such reason, and its suggestion that a disclosure need only reveal an overall fraud is just wrong. The adequacy of loss causation allegations against an auditor is "separate[] from the question of whether [the issuer] caused the loss." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 676 (S.D.N.Y. 2007).

Bluefin mischaracterizes PwC's argument as a "'truth on the market' defense" that cannot be resolved on pleadings. *See* Opp. at 25. But PwC is primarily asserting that Bluefin has failed to allege a sufficient connection between any disclosures it argues

Rules of Practice (https://www.sec.gov/rules-regulations/1998/10/amendment-rule-102e-commissions-rules-practice) (last visited Jan. 13, 2026) (discussing framework, legal basis, and public interest in enforcement actions against auditors where appropriate); *see also* 15 U.S.C. § 7217.

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

were "corrective" and PwC's allegedly false statements. The Court can and should decide as a legal matter that Bluefin's claim fails because its alleged corrective disclosures do not say anything about PwC's alleged misstatements at all. *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605, 608 (9th Cir. 2014).

Bluefin also asserts it is pleading loss causation through a materialization of risk. The Ninth Circuit has never recognized that approach, and even if it did, a plaintiff must allege the false statements "concealed" a risk "that materialized and played some part in diminishing the market value of a security." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120, 1122 n.5 (9th Cir. 2013) (cleaned up). "[B]are allegations that an undisclosed risk materialized to cause a plaintiff's loss are insufficient." *AOL*, 503 F. Supp. 2d at 678. Bluefin does not identify any particular risks and instead avers generally to the risk "that Brooge's financial results were fabricated through a fake invoicing scheme." Opp. at 22.

## IV.  **PwC Appropriately Adopted Certain of EY's Arguments.**

Bluefin claims that PwC's incorporation of EY's standing and statute of limitations arguments, Mem. at 25, is improper. Opp. at 25. Not so. Courts permit co-defendants to incorporate each other's arguments by reference. *E.g.*, *Meniooh v. Gagnon*, 2022 WL 4129305, at *1 (N.D. Cal. Sept. 12, 2022), *aff'd*, 2023 WL 5352002 (9th Cir. Aug. 21, 2023); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 184 F. Supp. 3d 861, 883 (D. Or. 2016). Bluefin's cases involve parties that attempted to incorporate broad arguments from their own prior briefs. *E.g.*, *Swanson v. United States Forest Serv.*, 87 F.3d 339, 342 (9th Cir. 1996) (party tried to incorporate 43 pages from preliminary injunction at summary judgment).

## **CONCLUSION**

Bluefin has now had the opportunity to amend its complaint—including by adding factual allegations (e.g., SAC ¶¶ 196–208)—and still has failed to plead a fraud-based claim against PwC. Accordingly, for the reasons set forth above and in PwC's Memorandum, the Court should dismiss Bluefin's claim against PwC, with prejudice.

Dated: January 14, 2026

Respectfully submitted,

By: */s/        Josh A. Rubin*
Josh A. Rubin (SBN 308421)
rubinj@akingump.com
AKIN GUMP STRAUSS HAUER & FELD
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone: 310.229.1000
Facsimile: 310.229.1001

M. Scott Barnard (admitted *pro hac vice*)
sbarnard@akingump.com
Jessica J. Mannon (admitted *pro hac vice*)
jmannon@akingump.com
AKIN GUMP STRAUSS HAUER & FELD
2300 N. Field St., Suite 1800
Dallas, TX 75201
Telephone:  214.969.2800
Facsimile:  214.969.4343

Claudius B. Modesti (admitted *pro hac vice*)
cmodesti@akingump.com
AKIN GUMP STRAUSS HAUER & FELD
Robert S. Strauss Tower
2001 K St NW
Washington, DC 20006
Telephone: 202.887.4000

Bruce R. Braun (admitted *pro hac vice*)
Karim Basaria (admitted *pro hac vice*)
Rebecca B. Shafer (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
bbraun@sidley.com
kbasaria@sidley.com
rshafer@sidley.com

DEFENDANT PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH'S
REPLY IN SUPPORT OF MOTION TO DISMISS

*Attorneys for Defendant
PricewaterhouseCoopers Limited
Partnership, Dubai Branch*

14

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant PricewaterhouseCoopers Limited Partnership, Dubai Branch, certifies that this memorandum of points and authorities is 12 pages in length and complies with the 12-page limit of this Court's Standing Order, Sec. F(3), dated December 17, 2024, ECF No. 48 at 8.

DATE: January 14, 2026

By: */s/      Josh A. Rubin*
Josh A. Rubin (SBN 308421)

*Attorneys for Defendant PricewaterhouseCoopers Limited Partnership, Dubai Branch*

---

15