**Milbank LLP**
Jed M. Schwartz, *pro hac vice*
JSchwartz@milbank.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Additional counsel listed on signature page

*Attorney for Defendant Ernst & Young*


# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BROOGE ENERGY LIMITED F/K/A BROOGE HOLDINGS LIMITED F/K/A TWELVE SEAS INVESTMENT COMPANY, NICOLAAS L. PAARDENKOOPER, SALEH YAMMOUT, SYED MASOOD ALI, LINA SAHEB, DIMITRI ELKIN, NEIL RICHARDSON, STEPHEN N. CANNON, PAUL DITCHBURN, ERNST & YOUNG, and PRICEWATERHOUSECOOPERS LIMITED PARTNERSHIP, DUBAI BRANCH,<br><br>Defendants. | Case No. 2:24-cv-00959-AH<br><br>Honorable Anne Hwang<br>UNITED STATES DISTRICT JUDGE<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT ERNST & YOUNG'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:       February 4, 2026<br>Time:       1:30 p.m.<br>Location:   350 West First Street<br>Courtroom:  9C |

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.    **PRELIMINARY STATEMENT**................................................................................1

II.    **ARGUMENT** ..........................................................................................................2

    A.    Plaintiff's Claims Are Untimely ....................................................2

    B.    Plaintiff Has Not Adequately Pled Falsity.....................................4

    C.    Plaintiff Has Not Adequately Pled Scienter...................................6

    D.    Plaintiff Has Not Adequately Pled Loss Causation .......................10

III.    **CONCLUSION** ......................................................................................................12

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)............................................................... 10, 11

*Baron v. HyreCar Inc.*,
  2022 WL 17413562 (C.D. Cal. Dec. 5, 2022)...................................... 5

*Betz v. Trainer Wortham & Co.*,
  610 F.3d 1169 (9th Cir. 2010) ...................................................... 2, 3

*Bond v. Clover Health Invs., Corp.*,
  2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023)........................... 11, 12

*Buttonwood Tree Value Partners, LP v. Sweeney*,
  910 F. Supp. 2d 1199 (C.D. Cal. 2012)............................................ 6, 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) ..................................................... 5, 6

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*,
  65 F.4th 459 (9th Cir. 2023) ............................................................. 2

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*,
  738 F. Supp. 3d 1182 (N.D. Cal. 2024)................................................ 4

*In re Countrywide Fin. Corp. Sec. Litig.*,
  2009 WL 943271 (C.D. Cal. Apr. 6, 2009)........................................... 4

*Danis v. USN Commc'ns, Inc.*,
  73 F. Supp. 2d 923 (N.D. Ill. 1999).................................................... 8

*In re DNTW Chartered Accts. Sec. Litig.*,
  172 F. Supp. 3d 675 (S.D.N.Y. 2016) ................................................. 7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)......................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ............................................................... 12

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
  639 F. App'x 664 (2d Cir. 2016) ........................................................... 3

*Hous. Mun. Emps. Pension Sys. v. BofI Holding, Inc.*,
  977 F.3d 781 (9th Cir. 2020) ............................................................... 11

*Hunt v. PricewaterhouseCoopers LLP (PwC)*,
  159 F.4th 603 (9th Cir. 2025) ............................................................... 4

*La.-Pac. Corp. v. ASARCO, Inc.*,
  5 F.3d 431 (9th Cir. 1993) ..................................................................... 4

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ............................................................... 9

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013) ................................................... 6

*Mehedi v. View, Inc.*,
  2023 WL 3592098 (N.D. Cal. May 22, 2023) ....................................... 6

*Microbot Med., Inc. v. Mona*,
  688 F. Supp. 3d 88 (S.D.N.Y. 2023) ................................................... 11

*New Mexico State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ............................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................ 4, 5

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158825 (S.D. Cal. 2005) ..................................................... 7

*Reiger v. PricewaterhouseCoopers LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000) ............................................. 8, 9

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2022 WL 3572474 (M.D. Pa. Aug. 18, 2022) ....................................... 6

*Session v. PLM Lender Servs., Inc.*,
  2011 WL 6748510 (N.D. Cal. Dec. 22, 2011) ....................................... 9

*In re Silver Wheaton Corp. Sec. Litig.*,
  2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) ....................................... 6

iii
DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
    243 F. Supp. 3d 1109 (E.D. Cal. 2017) ......................................... 4, 5, 6

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ................................................................. 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)........................................................................ 9, 10

*In re Upstart Holdings, Inc. Sec. Litig.*,
    348 F.R.D. 612 (S.D. Ohio 2025)...................................................... 12

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
    694 F. Supp. 2d 1192 (W.D. Wash. 2009) ........................................... 6

*Waters v. Gen. Elec. Co.*,
    2010 WL 3910303 (S.D.N.Y. Sep. 29, 2010) .................................... 11

*Welgus v. TriNet Grp., Inc.*,
    765 F. App'x 239 (9th Cir. 2019)......................................................... 5

**Statutes**

15 U.S.C. § 7217 ..................................................................................... 9

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I.    PRELIMINARY STATEMENT

EY's Motion to Dismiss (Dkt. 134-1, "Motion" or "Mot.") demonstrated several fatal flaws in the Second Amended Complaint ("SAC").   Plaintiff's Opposition ("Opp."), despite its length, fails to rebut any of them.[1]

*First*, EY's Motion showed that Brooge's audited financials had been withdrawn by August 2022, more than two years before this lawsuit was filed, triggering the statute of limitations.  Plaintiff asks the Court to overlook this fact by merely asserting that the statute of limitations involves a "fact-intensive inquiry," and Plaintiff only obtained certain specific documents later.  Opp 7.  But Plaintiff never identifies a single fact that was necessary to plead its claims, and that it could have learned only *after* August 2022. Opp. 8.  At a minimum, claims based on EY's opinion reproduced in Brooge's November 25, 2019 proxy statement are barred by the five-year statute of repose.  Under settled law, Plaintiff's claims against EY (a newly named defendant) do not relate back to the date of the initial complaint, because the initial complaint did not name EY.

*Second*, Plaintiff's theory that EY's audit opinions "are not by definition opinions," is contrary to law.  Opp. 8-9.  Rightly viewed as an opinion, the SAC fails to allege facts showing that the audit opinion is false.  The SAC alleges no facts showing that EY disbelieved its opinions or that its opinions contained embedded statements of fact that were untrue.  Nor are EY's opinions actionable by omission because they highlighted the very red flags Plaintiff claims EY concealed.

*Third*, Plaintiff fails to plead scienter.  Plaintiff's focus on purported "red flags" allegedly missed by EY ignores that each so-called red flag is either innocuous (*i.e.*, not a red flag of fraud, as is required), was publicly disclosed, or—at most—was a call for professional skepticism rather than evidence of knowing misconduct.  This is textbook fraud-by-hindsight pleading, which the PSLRA was designed to prevent.  In any event,

---

[1] Undefined capitalized terms have the same meaning as in the Motion.  Unless noted, case quotations omit all alterations, internal quotation marks, citations, and footnotes.

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

these allegations fail to create an inference of scienter that is at least as compelling as the non-fraudulent inference, which is that EY was a victim of, rather than perpetrator of, fraud—the same conclusion the SEC reached after its investigation.

*Finally*, Plaintiff cannot allege loss causation because the market learned that the Brooge financials EY had audited were unreliable on August 17, 2022, when they were withdrawn. The stock price went ***up*** in response, negating any claim that the revelation of an unreliable audit was the cause of any losses. Under well-settled precedent, a securities fraud plaintiff who cannot point to a stock drop following a corrective disclosure has no claim.

This Court should dismiss Plaintiff's claims against EY with prejudice.

## II.   ARGUMENT

### A.   Plaintiff's Claims Are Untimely

As EY explained (Mot. 8-9), Plaintiff's claims are untimely because the claims pled (although deficient) could have been pled by August 17, 2022, when the financial reports EY had audited were fully withdrawn. Plaintiff first, essentially, asks the Court to ignore this issue, arguing that statute of limitations defenses cannot be resolved at the motion to dismiss stage. Opp. 7. But that is wrong, and ignores settled precedent holding that where, as here, public disclosures (the existence of which the Court can take judicial notice) occurring more than two years prior to the complaint put a plaintiff on notice of its claim, that plaintiff's claims are untimely and must be dismissed without any need for further factual development. *See, e.g., York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 466 (9th Cir. 2023) ("[A] defendant establishes that a complaint is time-barred under § 1658(b)(1) if it conclusively shows that either (1) the plaintiff could have pleaded an adequate complaint based on facts discovered prior to the critical date and failed to do so, or (2) the complaint does not include any facts necessary to plead an adequate complaint that were discovered following the critical date [two years prior to the complaint].");  *see also Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1170-71 (9th Cir. 2010);

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 667 (2d Cir. 2016) (affirming dismissal of securities fraud claims where "a substantial portion of the information alleged in the complaint and integral documents was either known or freely available to investors" more than two years before the complaint was filed).

Plaintiff's fallback argument is that the August 2022 disclosure is not sufficient to put it on notice of its claim because it "did not explain *why* [the financial statements] were unreliable." Opp. 8. That is wrong. The disclosure specified that the financials were being withdrawn as "a result of the on-going examination undertaken by the Audit Committee, with the assistance of a respected global law firm and an expert accounting consultancy firm, in response to the previously noted examination being conducted by the SEC into the Company's financial statements," and that the issue that required the financials to be withdrawn was "focuse[d] primarily on revenue recognition." SAC ¶ 62. But the argument is also irrelevant.

"[C]onstructive discovery occurs when a reasonably diligent plaintiff would have actually discovered the facts constituting the violation," not when a plaintiff is in possession of every explanatory detail. *Betz*, 610 F.3d at 1171.[2] Here, Plaintiff was aware that the opinions were being withdrawn. And Plaintiff's allegations in support of its recklessness theory of scienter draw heavily from information that also was known by August 2022. Mot. 9, 12-14. Thus, Plaintiff could have alleged virtually the same claim in 2022, that it brought in 2025.

At a minimum, claims based on EY's opinion in the November 25, 2019 proxy

---

[2] Plaintiff states that EY's Motion cites to a July 2018 email and to Audit Committee minutes that Plaintiff received "shortly before filing the Complaint." Opp. 8. But EY's Motion does not cite to a July 2018 email. It references a March 2018 email cited in the SAC in its factual background section, but not to support its argument. And citations in EY's Motion to Audit Committee minutes are merely to demonstrate that the minutes Plaintiff relies on fail to establish scienter. Regardless, Plaintiff does not explain why these two documents (or any information not available on August 17, 2022) were necessary to plead its claims. Nor could it since its allegations rely on information available in August 2022. Mot. 8-9.

3

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

statement are untimely under the five-year statute of repose.  Plaintiff argues that its claims against EY relate back to the date "the original action" was filed against Brooge.  Opp. 8.  But relation back does not apply here because EY was not named as a defendant in the initial complaint.  *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 943271, at *5 (C.D. Cal. Apr. 6, 2009) (the repose period is determined from the date a defendant is named in a case); *see also La.-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) (amendment to add a new defendant did not relate back to earlier filed complaint as to new defendant); *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*, 738 F. Supp. 3d 1182, 1204 (N.D. Cal. 2024) ("Where an amended pleading adds a new defendant, . . . the [] pleading does not relate back to the filing of the original complaint unless the defendant should have known that, but for a mistake concerning identity, the action would have been brought against it.").

### B.    Plaintiff Has Not Adequately Pled Falsity

As EY has shown (Mot. 9-12), Plaintiff has not adequately pled falsity under Supreme Court precedent governing opinion statements.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-84, 194 (2015). Plaintiff's suggestion that *Omnicare* does not apply to audit opinions mischaracterizes *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1116 (E.D. Cal. 2017), and ignores recent precedent in which the Ninth Circuit held that *Omnicare* applies to audit opinions, that "an accountant's certification of financial statements is nothing more than an opinion," and that "a statement of opinion is not an untrue statement of a *material fact* simply because it is later determined to be incorrect."  *Hunt v. PricewaterhouseCoopers LLP (PwC)*, 159 F.4th 603, 613, 616 (9th Cir. 2025) (holding that "merely affirm[ing] that, in [the auditor's] opinion, [a company] followed the proper accounting principles" is a statement of opinion that is "protected under *Omnicare*").

Plaintiff's argument that it pled falsity under *Omnicare* is equally meritless.

*First*, Plaintiff alleges no facts showing that EY did not genuinely believe its

4

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

opinions. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 617 (9th Cir. 2017) (*Omnicare* standard not met where the complaint does not contain "sufficient facts that would allow [the Court] to infer subjective falsity"). Instead, Plaintiff asserts that EY "did not subjectively believe that its audits complied with PCAOB standards" because it "ignored numerous red flags." Opp. 9. At most, that is an allegation that EY "should have known" its opinion was wrong. That is not enough. *Welgus v. TriNet Grp., Inc.*, 765 F. App'x 239, 240-41 (9th Cir. 2019) (plaintiff must allege "contemporaneous evidence that [defendant] did not believe this statement to be true when made"); *see also* Mot. 14-19.

*Second*, Plaintiff argues that EY's audit opinions were false by omission "because they did not match what E&Y knew or should have considered." Opp. 10. What EY "should have considered" is irrelevant; EY could not omit to state what it did not know. As to what EY allegedly knew ("information about pervasive issues at Brooge—including its reliance on one customer, its related party transactions, and its lack of internal controls," Opp. 10) each of these so-called "pervasive issues" was expressly disclosed to investors (SAC ¶¶ 54, 57, 72, 91, 109-11, 116) and the financial statements that EY audited explicitly highlighted material weaknesses in Brooge's internal controls. *See* SAC ¶ 227; Mot. Ex. D at 52; Mot. Ex. E at 8-9, 150, F-2; Mot. Ex. F at 8-9, 147, F-2. Accordingly, Plaintiff's own complaint undermines any suggestion that EY's opinion was false by omission. In any event, *Omnicare* makes clear that a speaker offering an opinion is not required to disclose every fact that cuts against their opinion. *Omnicare*, 575 U.S. at 189 ("An opinion statement, however, is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way."). The theory Plaintiff urges violates that clear legal principle.[3]

---

[3] The cases Plaintiff relies on are not to the contrary. Each case Plaintiff cites involves a failure to disclose facts **known to the defendant** that rendered opinion statements misleading. *See Baron v. HyreCar Inc.*, 2022 WL 17413562, at *11 (C.D. Cal. Dec. 5, 2022) (facts known but omitted may render opinion misleading); *Special Situations*

*Third*, Plaintiff's argument that EY's opinion contained embedded statements of fact misstates the governing law in this Circuit. Opp. 10-11. Indeed, one of the very cases Plaintiff cites, *In re Silver Wheaton Corp. Sec. Litig.*, holds that mere statements that financial reports comply with PCAOB standards are pure statements of opinion and do *not* have any embedded statements of fact. 2019 WL 1512269, at *12 (C.D. Cal. Mar. 25, 2019) (adopting the analysis of *Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F. Supp. 2d 1199, 1208 (C.D. Cal. 2012)). And in *McIntire v. China MediaExpress Holdings, Inc.*, far from finding that statements of PCAOB compliance are statements of fact, the court declined to consider the question. 927 F. Supp. 2d 105, 133 (S.D.N.Y. 2013). Finally, the only case Plaintiff cites to the contrary was decided prior to *Omnicare*. *See In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1224 (W.D. Wash. 2009). Contrary to Plaintiff's assertion that "courts have long held that these precise statements are statements of fact," Opp. 11, every court of which EY is aware to consider the issue post-*Omnicare* has held that statements of audit compliance are statements of pure opinion. *See, e.g.*, *Mehedi v. View, Inc.*, 2023 WL 3592098, at *10 (N.D. Cal. May 22, 2023) (collecting cases).

**C.   Plaintiff Has Not Adequately Pled Scienter**

**1.   Plaintiff's "Red Flags" Are an Impermissible Attempt to Plead Fraud by Hindsight.**

As EY has shown (Mot. 14-19), Plaintiff's list of "red flags" amounts to no more than an impermissible attempt to plead fraud by hindsight. Red flags must be "indicative of actual fraud," not merely "unusual" arrangements that call for

---

*Fund*, 243 F. Supp. 3d at 1122 (same); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *57 (M.D. Pa. Aug. 18, 2022) (same). Here, the "pervasive issues" allegedly known to EY were disclosed to investors, and Plaintiff points to no particular (and material) facts known by EY "whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *City of Dearborn Heights*, 856 F.3d at 615.

6

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

"professional skepticism." *In re DNTW Chartered Accts. Sec. Litig.*, 172 F. Supp. 3d 675, 687 (S.D.N.Y. 2016).  Plaintiff offers, at most, the latter, *i.e.*, nothing more than "[r]etrospective assertions that [EY] should have expanded its auditing procedures, conducted further investigation, and issued 'qualified' or 'adverse' opinions." *Buttonwood Tree*, 910 F. Supp. 2d at 1207.

- First, Plaintiff argues that the mere fact Brooge represented that it received all its revenue from one client "should alone have been a red flag" for EY.  Opp 13.  But there is nothing inherently fraudulent about a relatively new, small company having one big customer.  Plaintiff claims that various stages of BIA's involvement should have put EY on notice of fraud.  *Id.*  But arrangements between related companies are not unusual, much less a "red flag" of fraud.

- Second, Plaintiff alleges that Brooge's "lack of internal controls may not in and of itself establish fraud, but it certainly would have alerted E&Y to the need to monitor or investigate."  Opp. 15.  But under settled law, "[b]lanket allegations of weak internal controls [] do not alone suffice as a basis for inferring scienter" on the part of an issuer, much less an auditor.  *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *53 (S.D. Cal. 2005).  And Plaintiff's suggestion that EY ignored material weaknesses in Brooge's internal controls runs contrary to cautionary statements to investors on this topic.  SAC ¶¶ 173, 227.

- Third, Plaintiff points to inconsistencies between the terms of certain contracts and the business realities.  But Plaintiff admits that Brooge created "more than one hundred invoices . . . that contained false information."  Opp. 15.  That EY received false audit evidence undercuts scienter, because it underscores the SEC finding that EY was the *victim* of Brooge's deception, not its accomplice.

- Fourth, that Brooge had some prior restatements is not, without more, indicia of fraud.  The prior restatements were properly addressed and disclosed, and these were routine accounting corrections, not fraud related.  *See* Mot. 17.

- Fifth, Plaintiff points to the size of Brooge's fraud as a red flag but pleads no

7

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

facts showing that EY was aware of the scale of the fraud at the time, which is what matters. *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1009 (S.D. Cal. 2000) ("Where a transaction derives its suspiciousness from specific details associated with the audited company's business, the plaintiff must plead facts suggesting the accountant's awareness of those details.").

- Sixth, uncertainty as to whether Brooge could continue as a going concern was not a red flag of fraud. The financial statements EY audited expressly disclosed "that there was a material uncertainty as to whether or not Brooge could continue as a going concern." SAC ¶ 240. If anything, the financial statements and EY's disclosures cut against scienter. If EY was knowingly engaged in fraud, why go out of its way to highlight the company's financial weakness?

The cases Plaintiff relies on only emphasize the high bar a plaintiff must clear to plead auditor scienter. *See New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1097 (9th Cir. 2011). Plaintiff's own cases demonstrate that its "red flags" are no more than conclusory allegations that EY "should have" done more and underscore the SAC's absence of particular facts supporting an inference of scienter. *Compare* Opp. 18 (arguing that because an investigation conducted with Brooge's cooperation uncovered the alleged fraud "it is unfathomable that E&Y did not") *and* SAC ¶¶ 3, 68, 76 (alleging that Brooge fabricated invoices to conceal the fraud), *with Danis v. USN Commc'ns, Inc.*, 73 F. Supp. 2d 923, 942 (N.D. Ill. 1999) (particular allegations that outside third parties were aware of a company's scheme suggests that its auditor "was likely aware of those conditions"), *and In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 280 (3d Cir. 2006) (pointing to "[t]hirty" red flags the auditor was aware of that suggested "evidence of [the company's] financial foul play was hiding in plain sight").

### 2. Plaintiff Fails to Overcome the Far More Compelling Non-Fraudulent Inference That EY Was a Victim of Brooge's Fraud

Plaintiff also has no persuasive response to the "plausible, nonculpable

8

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

explanations for the defendant's conduct" that the Court must consider in determining whether scienter is adequately pled. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). Plaintiff has no explanation for why EY would risk its license, expose itself to financial liability, and jeopardize its reputation to help a relatively new and small client perpetuate a fraud for a modest fee. *See Reiger*, 117 F. Supp. 2d at 1007 ("[A] large independent accountant will rarely, if ever, have any rational economic incentive to participate in its client's fraud.").

Plaintiff **speculates** that connections between Brooge and Sheikh MBK, a member of the UAE royal family, gave EY a motive to perpetrate a fraud. Opp. 19-20. But the SAC contains no factual allegations showing that Sheikh MBK had any influence or authority over EY's business or prospects. Plaintiff cannot amend its complaint to add new factual theories in an opposition. *Session v. PLM Lender Servs., Inc.*, 2011 WL 6748510, at *5 (N.D. Cal. Dec. 22, 2011) ("A plaintiff cannot avoid dismissal . . . by alleging new facts in opposition to a motion to dismiss."). And in any case, merely speculating that a defendant might wish to "curry favor" with someone else is not sufficient to plead motive. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (explaining that scienter cannot "be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects" and "generalized assertions of motive, without more, are inadequate to meet the heightened pleading requirements").

Finally, Plaintiff's attempt to downplay the SEC's finding that EY was a victim of Brooge's fraud because "[t]he SEC was not tasked with evaluating the work of E&Y" is plain wrong. Opp 20. The SEC has jurisdiction over auditors like EY, 15 U.S.C. § 7217, and in this case specifically, the SEC was not silent about EY's role. Rather, the SEC expressly concluded that Brooge management deceived the company's auditors by providing false audit evidence. Mot. Ex. B at ¶¶ 23-25. This undermines Plaintiffs' entire theory against EY and supplies a more compelling, non-fraudulent inference, which precludes this claim under the special pleading standards

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

of the PSLRA. *Tellabs*, 551 U.S. at 324 (a securities fraud claim survives a motion to dismiss only if the inference of scienter is "cogent and *at least as compelling as any opposing inference one could draw from the facts*" after considering "plausible, nonculpable explanations for the defendant's conduct") (emphasis added).

### D.   Plaintiff Has Not Adequately Pled Loss Causation

#### 1. The August 17, 2022 Disclosure Corrected EY's Alleged Misstatement—and the Stock Price Rose

Plaintiff's opposition only confirms what EY's motion established:  there is a fatal mismatch between Plaintiff's theory of fraud and its theory of loss.

EY's alleged misrepresentation was narrow:  that Brooge's financial statements "present fairly, in all material respects, [Brooge's] financial position."  SAC ¶¶ 171-73.  On August 17, 2022, Brooge told investors the opposite—that *those same financial statements* were inaccurate and should not be relied upon.  Mot. 21.  That was a corrective disclosure.  Plaintiff does not dispute the market's reaction:  the stock price went *up*.  Plaintiff argues that EY did not itself withdraw its audit opinions. Opp. 23.  But loss causation turns on when the market learned the truth, not on who delivered the news.  Once Brooge announced that its financials could not be relied upon, EY's prior opinion was effectively nullified.

Plaintiff next argues that the August 17 announcement "came nowhere near disclosing that Brooge's entire operation was a scam."  Opp. 23.  This confuses EY's alleged fraud with Brooge's.  Plaintiff's claim against EY is that EY certified unreliable financials as reliable.  When the market learned those financials were unreliable, EY's statement was corrected.  That the market later learned additional details about *Brooge's* misconduct—the CEO's resignation, the SEC settlement—added nothing new about the reliability of EY's years-old audit opinions.  Those opinions had already been withdrawn.

Finally, Plaintiff argues that "truth on the market" is a question for trial or summary judgment.  Opp. 22-23.  But *Amgen*, which Plaintiff cites, does not save a

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

complaint where, as here, Plaintiff's own allegations and judicially noticeable facts establish that the alleged misstatement was corrected—and the stock rose. *See, e.g.*, *Hous. Mun. Emps. Pension Sys. v. BofI Holding, Inc.*, 977 F.3d 781, 789 (9th Cir. 2020) (at the motion to dismiss stage, plaintiff must show that the corrective disclosure caused "the fraud-induced inflation in the stock's price to be reduced or eliminated," *i.e.*, that the stock price dropped rather than rose); *Microbot Med., Inc. v. Mona*, 688 F. Supp. 3d 88, 115 & n.21 (S.D.N.Y. 2023) (a "stock price r[i]se instead of decline[] following revelation of the alleged fraud" is "fatal" at the motion to dismiss stage); *Waters v. Gen. Elec. Co.*, 2010 WL 3910303, at *8 (S.D.N.Y. Sep. 29, 2010) ("The Court cannot find . . . a single section 10b-5 case in which the plaintiff prevailed on a motion to dismiss when the stock price *increased*."), *aff'd sub nom.*, *GE Invs. v. Gen. Elec. Co*., 447 F. App'x 229 (2d Cir. 2011).[4]

### 2. Plaintiff's Common Stock Claim Fails Independently

Even setting aside the corrective disclosure, Plaintiff's claim for losses on Brooge common stock—distinct from warrants—fails for two independent reasons.

*First*, Plaintiff suffered no loss on its common stock investment. Plaintiff's own PSLRA certification shows a net ***gain*** of $281,380 on common stock transactions. Plaintiff protests that EY is "cherry-picking" by excluding warrants. Opp. 24. But EY is not ignoring warrants—EY is explaining why the common stock claim fails ***on its own terms***. Common stock and warrants are different securities with different risk profiles and different class definitions. Plaintiff cannot rely on warrant losses to manufacture a common stock injury that does not exist.

Plaintiff's reliance on *Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859, at *7 (M.D. Tenn. Feb. 14, 2023), is misplaced. There, plaintiff made profits based

---

[4] In contrast, *Amgen*, stands for the proposition that "plaintiffs are not required to prove materiality at the class-certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). *Amgen* does nothing to reduce a plaintiff's burden to adequately plead the elements of its claim.

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

on sales after the class period, but its claimed damages were based on the decline in stock price from the alleged corrective disclosure while holding the stock. *Id.* It was in that context that the court stated that "[f]raud requires only that the plaintiff was injured, not that he *never* enjoyed a benefit." *Id.* Here, Plaintiff's disclosure shows it earned profits on common shares ***during*** the class period, and so was not injured.[5] *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (purchasing at allegedly artificially inflated prices, without more, "is not itself a relevant economic loss").

*Second*, Plaintiff was an in-and-out trader on common stock. Applying the LIFO method that courts uniformly use, every share Plaintiff purchased after EY's alleged misstatements was sold *before* the first alleged corrective disclosure. Plaintiff does not dispute the math. Instead, it points to "late 2023" trades, and calls EY's analysis "speculative." Opp. 25. But it is not speculative: Plaintiff's own trading records—incorporated into the SAC—establish that Plaintiff held no relevant common shares through any corrective disclosure date. A plaintiff who sells at the allegedly inflated price before any correction has suffered no loss from the alleged fraud. *Dura*, 544 U.S. at 342; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) ("in-and-out traders" who sold before corrective disclosures will not "even conceivably be able to prove loss causation as a matter of law").

Plaintiff's assertion that these issues require fact development is meritless. The trading records are in Plaintiff's own complaint, and they foreclose the claim.

## III.  CONCLUSION

For the foregoing reasons, Defendant EY requests that Plaintiff's Second Amended Complaint be dismissed in its entirety, with prejudice.[6]

---

[5] The *In re Upstart Holdings, Inc. Sec. Litig.* court relied on *Bond* in holding that the options purchaser was an adequate class representative, not that such plaintiff had alleged loss causation. 348 F.R.D. 612, 625 (S.D. Ohio 2025).

[6] Plaintiff requests leave to further amend its SAC if EY's Motion is granted. Opp. 25. Plaintiff has had two opportunities to amend its complaint. Further amendment would be futile and prejudicial to EY.

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Dated:  January 14, 2026

Respectfully Submitted,

**MILBANK LLP**

By: */s/ Jed M. Schwartz*
Jed M. Schwartz, *pro hac vice*
JSchwartz@milbank.com
George S. Canellos, *pro hac vice*
GCanellos@milbank.com
Tawfiq S. Rangwala, *pro hac vice*
TRangwala@milbank.com
John J. Hughes, III, *pro hac vice*
JHughes2@milbank.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Samir L. Vora (State Bar #136644)
SVora@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4404
Facsimile: (213) 629-5063

*Attorneys for Defendant Ernst & Young*

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Ernst & Young, certifies that this reply memorandum of points and authorities is 12 pages in length and complies with the 12-page limit set by this Court's Standing Order dated December 17, 2024 (Dkt. No. 48).

Dated:  January 14, 2026

**MILBANK LLP**

By: */s/ Jed M. Schwartz*
Jed M. Schwartz, *pro hac vice*

*Attorneys for Defendant Ernst & Young*

DEFENDANT ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS